Present: All the Justices

FIRST AMERICAN BANK
OF VIRGINIA, ET AL.

v. Record No. 990366

J.S.C. CONCRETE CONSTRUCTION,
INC.

                              OPINION BY JUSTICE A. CHRISTIAN COMPTON
                                      January 14, 2000
J.S.C. CONCRETE CONSTRUCTION,
INC.

v. Record No. 990426

FIRST AMERICAN BANK
OF VIRGINIA, ET AL.


             FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                   Carleton Penn, Judge Designate

     These two appeals stem from a single suit to enforce

mechanics' liens.  Although such a lien is a creature of

statute, the lien must have its foundation in a contract, with

which the lien must correspond.  Sergeant v. Denby, 87 Va. 206,

208, 12 S.E. 402, 402 (1890).  Here, we must decide first just

what comprises the underlying contract of the parties.  Then,

the dispositive issue will become whether the contract's lien

waiver provisions control the rights of the lien claimant.

     In 1989, Drewer Development Corporation (Drewer or DDC) was

a developer of multiple-lot residential projects in Northern

Virginia.  J.S.C. Concrete Construction, Inc. (JSC), was a

concrete flatwork and walls contractor, which had worked for Drewer for a number of years on different projects.

On January 10, 1991, JSC filed memoranda of mechanic's lien against 13 lots in two different residential projects being developed by Drewer in Loudoun County. In a timely filed suit to enforce the liens, JSC's bill of complaint named multiple defendants, including Drewer, which was the record owner of the properties, and other mechanic's lien claimants. The bill also named as defendants First American Bank of Virginia and Commonwealth Abstract Corporation, Trustee (collectively, the Bank), the secured party and trustee, respectively, under construction loan deeds of trust upon the properties.

The cause was referred to a commissioner in chancery who held an evidentiary hearing in August 1995. At that stage of the proceeding, the only parties active in the litigation were JSC and the Bank; Drewer had ceased doing business in 1991.

In a December 1996 report, the commissioner recommended that portions of seven of the original 13 liens be declared valid in the total amount of $39,124.81 out of the $161,252.74 initially claimed. The commissioner also recommended that prejudgment interest be assessed from December 30, 1990.

JSC and the Bank filed exceptions to the commissioner's report. Following argument of counsel, the chancellor overruled the exceptions, but for two minor items not at issue on appeal,

2

and confirmed the report in a December 1998 final decree.  We awarded the Bank and JSC separate appeals and consolidated them.

The facts are undisputed.  On March 16, 1989, JSC entered into a "Contractor Base Agreement" with Drewer.  The three-page, 29-paragraph, mostly preprinted agreement set forth the general conditions under which JSC would perform work for Drewer.  It provided that its purpose was "to fix the obligations" of the parties with regard to the work.

It further provided that the work to be performed would be "specifically described in Work Orders issued but is generally as follows:  To supply and install materials and labor for footings (turn down slab) and insulation slab (step from slab to garage) Stoop and Steps and Walls."

The Base Agreement also provided:  "In conjunction with this Agreement, DDC may issue Work Orders from time to time covering the Work to be performed and time for completion at each specific job location.  Work Orders will usually be issued prior to the start of required work."  The agreement stated that "the term Work Order shall include forms designated 'Extra Work Order' and other similar designations and containing information about commencing such Work and the payment for such Work."

The agreement further provided that it was "non-exclusive and that DDC is free to contract with any other entity for the performance of the Work described in this Agreement."

3

Elaborating, the agreement stated that Drewer was "not obligated to issue Work Orders" to JSC.  Also, the agreement provided that no payments would be due under it until Drewer received "a Work Completion Certificate which certifies that all Work to be performed under a particular Work Order has been completed satisfactorily."

The remaining paragraphs of the Base Agreement included provisions requiring JSC, for example, to become familiar with plans and specifications, to cooperate with other contractors, to obtain all required licenses and permits, to indemnify Drewer for all claims arising from performance of the work, to provide new materials, to keep the job site free of waste and rubbish, and to obtain necessary insurance coverage.

Additionally, the agreement contained a paragraph providing that JSC waived all rights to file mechanics' liens against the property for any labor, services, or materials furnished to Drewer.

During the time when JSC performed work for Drewer a pattern of performance was established between the parties.  JSC would only begin work on a Drewer project when Drewer issued preprinted work order forms labeled "Extra Work Order."  These forms would name the particular project, identify the type of dwelling involved and its lot location, list the concrete work to be performed and state the price to be paid JSC.  The date of

4

the work order indicated the date that JSC was authorized to begin construction.

Printed at the foot of the form was a paragraph labeled "Work Completion Certificate."  As we have said, this was used to notify Drewer that the work had been completed satisfactorily upon the date the form was signed on behalf of JSC.

According to the evidence, there were basically three phases of the concrete work on each dwelling:  (1) Footings and foundation, (2) slabs, and (3) stoops and hearth.  Drewer would issue three separate Extra Work Order forms to JSC for the three phases of the concrete work on each particular house and lot. The three forms were always issued on the same date and each form was for a different phase of the concrete work.  No single form listed all three phases of the concrete work.

Once the forms were received, JSC, or its subcontractor, would proceed with the work, phase by phase, as the house reached the stage of construction called for by each work order. As the phase of the work described in each form was completed, JSC would submit the dated Work Completion Certificate to Drewer.  Payment from Drewer for that phase of work would be due JSC at the time each certificate was submitted.

A portion of the Work Completion Certificate deals with the subject of mechanics' liens.  It purports to waive any rights to

file mechanics' liens only "upon receipt of payment from Drewer Development."

Keeping in mind that the initial issue we must decide is just what comprised the contract between the parties, we shall summarize the commissioner's finding on that question, which was confirmed by the chancellor. The commissioner stated that, although the Contractor Base Agreement outlined the general terms and conditions of the work that would be required by JSC, "the agreement was non-exclusive with DDC reserving the right to contract with any other party for the work described. Only when DDC issued work orders to JSC and JSC accepted the orders by supplying the materials and labor was a contractual offer and acceptance established."

The commissioner determined that because the work orders identified the details of the obligations between the parties and verified the dates that the work was completed, upon which dates the timely filing of the liens must be based, "the liens correspond directly to the individual Work Orders and not the Contractor's Base Agreement." In other words, the commissioner, and the chancellor, ruled that each Extra Work Order for a lot was a separate, stand alone contract, thereby taking the Contractor Base Agreement out of the equation.

In view of that ruling, it became unnecessary for the commissioner and the chancellor to consider the lien waiver

6

provisions of the Base Agreement. Focusing only on the lien waiver language of the Extra Work Orders, the commissioner and the chancellor found that JSC "did not waive its right to file its mechanic's liens." They said "the lien waiver stated in the Work Orders which stipulates 'upon receipt of payment,' is considered to be a conditional lien waiver. As JSC has not received payment for the work indicated in the liens, the lien waiver is non-binding."

Having determined that each Extra Work Order was a separate contract, and that the work orders for each lot collectively did not constitute a single contract for each lot, as JSC had argued, the commissioner found that the time for filing a mechanic's lien for much of JSC's work had expired, and reduced JSC's claim as the result of the untimely filings. Accordingly, the trial court reduced JSC's total claim made at the commissioner's hearing of $80,549.51 by $41,424.70.

In its appeal, the Bank contends that the Contractor Base Agreement and the Extra Work Orders for each lot together form the contract between the parties and that the trial court erred in ruling that each work order was a stand alone contract. The Bank further contends that the lien-waiver language in the work order conditioned upon receipt of payment should not supersede the express waiver of mechanic's lien rights contained in the Base Agreement, and that the trial court erred in refusing to

hold that JSC had waived all its claims. Also, the Bank contends the trial court erred in awarding prejudgment interest.

In its appeal, JSC contends all its liens were timely filed and should be enforced because the trial court erred in ruling that the individual work orders for each lot constituted separate contracts. JSC argues that the work orders for a particular lot "should be considered as a unitary and continuing contract for that lot such that the time for filing a mechanic's lien does not begin to run until the last work is performed on that lot." Thus, JSC asks this Court to reverse that portion of the trial court's decree which deducted $41,424.70 from its total claim and to modify the decree to include that sum in the total principal amount of the judgment in its favor.

We agree with the Bank upon what comprises the contract between the parties, and we also agree with the Bank that JSC, according to the provisions of the Base Agreement, waived its rights to file its mechanics' liens.

Several settled principles are applicable in this case of contract interpretation. In the present case, the question of what comprised the parties' contract and the interpretation of that contract is a question of law. Thus, upon review, we are not bound by the trial court's opinion on those issues. See Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984). Additionally, "when parties have entered into two

8

documents relating to a business transaction, the writings will be construed together to determine the parties' intent." Doswell Ltd. Partnership v. Virginia Elec. and Power Co., 251 Va. 215, 222, 468 S.E.2d 84, 88 (1996).

First, we conclude that the trial court incorrectly identified the underlying contract. In expressly ruling that each work order for a house and lot was a stand alone contract, and implicitly ruling that the Base Agreement was a nullity, the court disregarded clear language in both the agreement and the work orders that requires the documents to be construed as one integrated contract.

For example, the Base Agreement provides that its purpose "is to fix the obligations of" the parties. The Base Agreement states that the term "Contract Documents" shall mean the Agreement "together with any Work Orders."

Moreover, the Base Agreement provides that the term "Work" would "have the meaning specified in Section 3." Section 3 identifies the three phases of the concrete work to be performed by JSC that are to be "specifically described in Work Orders issued."

The Extra Work Orders provide no new terms. Indeed, the form states that JSC "is authorized and hereby agrees to do the following work under the terms and conditions of the Contractor Base Agreement."

Manifestly, the language of the documents contemplates that both must be read together to set forth the full understanding of the parties, and that neither one standing alone constituted a complete contract. The work order specified the work to be done under the terms and conditions established in the Base Agreement. Upon Drewer's offer extended by issuance of the work order (which incorporated the Base Agreement) being accepted by JSC's consent to perform under the work order, a binding contract between the parties was formed.

Because of the conclusion we reach on the second issue, it is unnecessary to decide whether there were three contracts on each house, one for each phase of the work, or whether there was one contract on each house incorporating the three work orders. Whether there are three contracts or one, the lien-waiver language is present in all the contracts.

This brings us to the second issue, that is, whether, in the contract, JSC waived its rights to file mechanics' liens.

The statute creating the right to a mechanic's lien specifically provides that any right to file or enforce such a lien "may be waived in whole or in part at any time by any person entitled to such lien." Code § 43-3(C). Such a waiver "must be express, or, if it is implied, it must be established by clear and convincing evidence." McMerit Constr. Co. v.

10

Knightsbridge Dev. Co., 235 Va. 368, 374, 367 S.E.2d 512, 516 (1988).

Resolution of this issue requires interpretation of the provisions in the Base Agreement and the Extra Work Orders touching that subject. Paragraph 21 of the Base Agreement provides:

"TO THE EXTENT NOT PROHIBITED BY LAW, CONTRACTOR [JSC] HEREBY WAIVES AND RELINQUISHES ANY AND ALL STATUTORY OR CONTRACTUAL RIGHTS THAT HE MAY HAVE TO OBTAIN STOP NOTICES OR LIENS, MECHANICS OR OTHERWISE, AGAINST THE PROPERTY OR IMPROVEMENTS THAT ARE THE SUBJECT OF THE WORK, AND AGREES NOT TO FILE ANY SUCH NOTICE OR LIEN AGAINST SUCH PROPERTY OR IMPROVEMENTS FOR ANY LABOR, SERVICES, OR MATERIALS FURNISHED TO DDC."

The work order Work Completion Certificate provides:

"Contractor [JSC] hereby reports completion of work authorized above in compliance with the terms and conditions of the Contractor Base Agreement and requests payment of the consideration set forth above in the amount of $_____. Contractor certifies that all labor and materials are paid in full, that all withholding taxes, social security taxes and applicable unemployment taxes for all employees of Contractor have been paid, and upon receipt of payment from Drewer Development, Contractor waives and releases all actions, claims, and demands against Drewer Development and waives any mechanic's, materialmen's or like liens and all rights to file any such liens in the future against the real property on account of the work, services, equipment and materials performed or furnished by Contractor."

The language of the Base Agreement is express and unambiguous; it is an unconditional waiver of the right to file mechanics' liens. Indeed, paragraph 24(e) provides that JSC

11

shall be in breach of the agreement if it "shall file a claim or lien against the property where the Work has been performed."

An apparent inconsistency is created, however, by the Work Completion Certificate. If that language applies to waiver of mechanic's lien rights, it must be construed to mean that lien waiver rights are waived only "upon receipt of payment." But if the contractor has been paid in full, the law gives it no lien. Payment "removes any right it may have had to effect a lien." Walker & Laberge Co. v. First Nat'l Bank of Boston, 206 Va. 683, 692, 146 S.E.2d 239, 246 (1966). Therefore, an interpretation that makes the enforceability of the work order's lien waiver clause conditioned upon payment should be avoided, as the Bank argues.

However, in construing contract documents as a whole, "the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it." Daugherty v. Diment, 238 Va. 520, 525, 385 S.E.2d 572, 574 (1989). In other words, when two provisions of a contract appear to be mutually conflicting, they should be reconciled if a reasonable basis for reconciliation is afforded by the instrument's language. Hutchison v. King, 206 Va. 619, 624-25, 145 S.E.2d 216, 220 (1965).

When the contract is considered as a whole, and the Work Completion Certificate is read as a part of the contract, the contract clearly provides a binding waiver of mechanic's lien rights. The Base Agreement paragraph addresses only waiver of liens. But, the Work Completion Certificate addresses at least two subjects: The right to file liens, which already has been waived when the work order becomes a part of the contract, and other "actions, claims and demands."

In order to reconcile the provisions, we interpret the condition precedent of payment to apply only to waiver of "actions, claims, and demands," and not to lien waiver. In other words, the clause in the Certificate should be read in two parts: (1) "upon receipt of payment from Drewer Development, Contractor waives and releases all actions, claims, and demands against Drewer Development" and (2) "waives any mechanic's, materialmen's or like liens and all rights to file any such liens in the future." This second portion merely reaffirms the waiver of lien rights that are so clearly set forth in the Base Agreement.

Consequently, we hold that the trial court erred in refusing to rule that JSC waived its rights to file mechanic's liens. Thus, it becomes unnecessary to address the prejudgment interest question.

13

Therefore, the judgment of the court below will be reversed and final judgment will be entered here in favor of the Bank dismissing JSC's bill of complaint.

Record No. 990366 — <u>Reversed and final judgment</u>.
Record No. 990426 — <u>Reversed and final judgment</u>.

14