FOOTHILL CAPITAL CORP.,
Plaintiff/Appellant,

v.

EAST COAST BUILDING SUP-
PLY CORP., et al., Defen-
dants/Appellees.

Civ. No. 2:00CV430.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 23, 2001.

Augustus Charles Epps, Jr., Christian & Barton, Richmond, VA, Jesse H. Austin, III, Eric W. Anderson, Christopher S. Strickland, Paul, Hastings, Janofsky & Walker, LLP, Atlanta, GA, for appellant.

Frank James Santoro, Marcus, Santoro & Kozak, Portsmouth, VA, John Dinshaw McIntyre, Willcox & Savage, P.C., Norfolk, VA, for appellees.

Anastasia Petrou Kezman, Office of the U.S. Trustee, Norfolk, VA, U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on appeal from the Memorandum Opinion and Order entered by the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") on May 19, 2000. For the reasons outlined below, the decision of the Bankruptcy Court is **AFFIRMED**.[1]

---

1. On January 22, 2001, Appellant Foothill Capital Corporation filed a motion requesting oral argument in the instant action. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. Accordingly, Foothill's motion for oral argument is **DENIED.**

## I. FACTUAL AND PROCEDURAL HISTORY

Appellant Foothill Capital Corporation ("Foothill") is a secured creditor of Appellee East Coast Building Supply Corporation ("East Coast"). Both companies entered into a Loan and Security Agreement that provided debtor East Coast with various loans up to a maximum amount of $10,500,000. Dated October 13, 1998, the Loan and Security Agreement includes four specific loans: a revolving loan providing a maximum amount of $ 7,500,000, a capital expenditure loan providing a maximum amount of $500,000 and two term loans for $ 1,100,000 and $ 1,400,000 each. The Loan and Security Agreement also provides Foothill with a general and continuing security interest in "all currently existing and hereafter acquired or arising Personal Property Collateral." "Personal Property Collateral" is defined as "all collateral other than Real Property Collateral," and "Collateral" is broadly defined as "all property of Borrower, whether now existing or hereafter acquired."

Contemporaneously with the execution of the Loan and Security Agreement, East Coast and Foothill executed a "Deed of Trust, Assignment, and Security Agreement, and Fixture Financing Statement" ("Deed of Trust"). The Deed of Trust conveys to Foothill a security interest in the personal and real property, buildings, structures and improvements associated with a single piece of real property located at 404 Greentree Road, Chesapeake, Virginia (the "Greentree Site"). Therefore, unlike the Loan and Security Agreement which encumbers all East Coast personal property, wherever located, the Deed of Trust encumbers all East Coast real and personal property at a single location, the Greentree Site.

A distinctive feature of the Deed of Trust is its inclusion of a special provision (the "lien limitation"), which limits Foothill's lien on all property encumbered by the Deed of Trust to $1,400,000, plus interest and associated fees and costs allowable under the agreement. The lien limitation provides, in pertinent part:

> Borrower [East Coast] and Lender [Foothill] ... have executed and delivered that certain Loan and Security Agreement [the Loan and Security Agreement] dated as of the date hereof ... pursuant to which the maximum principal amount secured by this Instrument is $1,400,000.00 plus interest and all costs and expenses, as more particularly set forth herein.

No similar provision is incorporated within the Loan and Security Agreement.

Despite this distinctive feature, both documents share similar provisions. For example, both documents contain a "cumulative remedies provision," ensuring that Foothill's rights and remedies under each document, as well as any rights and remedies provided by additional documents pertaining to the same transaction, are cumulative. As a result, election of one remedy cannot abrogate Foothill's ability to concurrently or successively elect additional remedies, regardless of whether those remedies are derived from the same document or different documents. In addition, neither the Loan and Security Agreement nor the Deed of Trust contain a provision indicating that one document should carry controlling or preemptive weight. Therefore, as the Bankruptcy Court found, both documents are of "equal dignity."

Despite the execution of the Loan and Security Agreement, debtor East Coast experienced financial difficulties rendering the company insolvent. Creditors of East Coast filed an involuntary petition pursuant to Chapter 11 of the United States Bankruptcy Code on November 12, 1999. The Bankruptcy Court for the Eastern District of Virginia ordered Chapter 11 relief on December 2, 1999, with the consent of East Coast.

During the course of Chapter 11 proceedings, East Coast sought Bankruptcy Court approval to sell real and personal property located at the Greentree Site to

Moore's Lumber & Building Supplies, Inc. ("Moore's Sale") for $ 1,850,000. East Coast also sought approval to make the Moore's Sale free and clear of all liens and to disburse all proceeds to Foothill. To this end, East Coast filed a Motion for Authority to Sell Property to Moore's Not in the Ordinary Course of Business Free and Clear of Liens and to Disburse Proceeds of Sale to Foothill ("Moore's Sale Motion"). However, East Coast's Unsecured Creditor's Committee ("the Committee") filed a response to the Moore's Sale Motion, in which it objected to East Coast's plans to disburse all Moore's Sale proceeds to Foothill. In its response, the Committee contended that Foothill's total recovery on Greentree Site personal and real property sales may not exceed the Deed of Trust lien limitation amount, plus interest and allowable fees and costs.

Although the Bankruptcy Court allowed East Coast to proceed with the Moore's Sale, it ordered that all Moore's Sale proceeds be placed in escrow to allow final resolution of the Committee's objections. The Bankruptcy Court also ordered Foothill to commence adversary proceedings, resulting in the instant action. On March 10, 2000, both parties filed cross motions, with Foothill seeking summary judgment and the Committee seeking partial summary judgment.

The Bankruptcy Court issued a Memorandum Opinion and Order on May 19, 2000, granting the Committee's motion for partial summary judgment and denying Foothill's motion for summary judgment. The Bankruptcy Court ruled that all real and personal property at the Greentree site is subject to the Deed of Trust $1,400,000 lien limitation, notwithstanding the fact that all personal property at the Greentree Site is also encumbered by the Loan and Security Agreement, which has no lien limiting provision. The practical effect of the Bankruptcy Court's ruling was to cap Foothill's recovery from Moore's Sale proceeds and any previously received Greentree Site sales proceeds to the Deed of Trust lien limitation amount, plus interest and associated fees and costs.

## II. STANDARD OF APPELLATE REVIEW

A bankruptcy court's decisions of law are reviewed *de novo* by a district court. *See L & R Associates v. Curtis*, 194 B.R. 407, 409 (E.D.Va.1996) (citing *In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992)). However, a different legal standard applies to a bankruptcy court's findings of fact, which a district court reviews under a clearly erroneous standard. *See* Fed. R.Bankr.P. 8013.

## III. DISCUSSION

Both parties agree that the sole issue presented on appeal is whether the Bankruptcy Court was correct in finding that the $1,400,000 lien limitation included within the Deed of Trust applies to all personal and real property at the Greentree Site. Foothill contends that its recovery on personal property sales at the Greentree Site should not be limited by the Deed of Trust lien limitation because such property is also encumbered by the Loan and Security Agreement which includes no lien limiting provision. According to Foothill, the Bankruptcy Court's ruling effectively nullifies its cumulative remedies provisions and violates the plain meaning of the contractual language used in both documents.

Alternatively, the Committee asserts that Virginia rules of contract interpretation require this Court to affirm the Bankruptcy Court's ruling. Alleging that Foothill has already received $629, 390 from previous personal property sales at the Greentree Site, the Committee contends that Foothill's total recovery from Moore's Sale proceeds and any previously received Greentree Site personal and real property sales proceeds, should not exceed the $1,400,000 lien limitation plus interest and allowable fees and costs under the Deed of Trust. In addition, in a separate pleading filed with this Court, debtor East Coast expressed its support for the Committee's

position and the Bankruptcy Court's ruling.

## A. Motion to Strike

Subsequent to the filing of initial pleadings in the instant appeal, the Committee filed a Motion to Strike pages two through five of Foothill's reply brief, contending that Foothill raised a new issue not properly preserved for appellate review. That issue is Foothill's assertion that the Bankruptcy Court used an incorrect standard by failing to review all evidence in a light most favorable to Foothill on the Committee's motion for partial summary judgment.

■ However, as this opinion will later discuss, the Court is presented with the sole task of interpreting an unambiguous contract. "When the terms of the parties' documents are clear and unambiguous, the interpretation of those terms presents a question of law." *Musselman v. Glass Works, L.L.C.*, 533 S.E.2d 919, 920 (Va. 2000) (citing *Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C.*, 258 Va. 524, 528, 521 S.E.2d 761 (1999)); *see Gordonsville Energy, L.P. v. Virginia Elec. & Power Co.*, 257 Va. 344, 352–53, 512 S.E.2d 811 (1999). Because the standard used by the Bankruptcy Court to interpret the contract is a question of law, that issue is properly before this Court under a *de novo* standard of review. Accordingly, the Committee's Motion to Strike pages two through five of Foothill's reply brief is **DENIED.**

## B. Virginia Rules of Contract Interpretation

■ It remains uncontested that the instant action requires reference to Virginia rules of contract interpretation. Although numerous rules have developed to assist courts in the task of interpreting contracts, there are several rules that are highly relevant to the instant action. First, the cardinal rule in any action involving contract interpretation is that courts uphold the intent of the contracting parties as expressed through contractual language. *See Bender–Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 588, 179 S.E.2d 636 (1971). Second, where the parties' intent is clear and contractual language amenable to only one reasonable interpretation, courts are to construe contractual language according its plain and ordinary meaning. *See Appalachian Power Co. v. Greater Lynchburg Transit Co.*, 236 Va. 292, 295, 374 S.E.2d 10 (1988). This latter canon is commonly referred to as the "plain meaning rule," and it is well-established under Virginia rules of contract interpretation. *See id.* Thirdly, "it is the duty of the court, where a business transaction is based upon more than one document executed contemporaneously by the parties ... to construe the documents together" when determining the parties' contractual intent. *In re 1550 Wilson Boulevard L.P.*, 206 B.R. 812, 817 (Bankr. E.D.Va.1996) (citing *Daugherty v. Diment*, 238 Va. 520, 385 S.E.2d 572 (1989)); *see also American Realty Trust v. Chase Manhattan Bank*, 222 Va. 392, 403, 281 S.E.2d 825 (1981) (in action involving a loan agreement, deed of trust, note, and guaranty agreement, court stating that "where parties have entered into more than one document relating to a business transaction, the documents should be interpreted together, [with] each one assisting in determining the meaning intended to be expressed by the others"); *First Am. Bank of Virginia. v. J.S.C. Concrete Constr., Inc.*, 259 Va. 60, 67, 523 S.E.2d 496 (2000) ("When parties have entered into two documents relating to a business transaction, the writings will be construed together to determine the parties' intent.") (citing *Doswell Ltd. Partnership v. Virginia Elec. & Power Co.*, 251 Va. 215, 222, 468 S.E.2d 84 (1996)).

■ "A corollary to the last stated principle is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 (1984); *see also Berry v. Klinger*, 225 Va.

201, 208, 300 S.E.2d 792 (1983) (stating a contract's "meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties"). As a result, no word or provision can be rendered meaningless when a reasonable interpretation exists that gives effect to and is consistent with all parts of the contract. *See Wilson,* 227 Va. at 187, 313 S.E.2d 396; *Berry, 225 Va.* at 208, 300 S.E.2d 792. This principle is of no lesser import when a contract consists of multiple documents executed contemporaneously. *See Wilson,* 206 B.R. at 817; *see also First Am. Bank of Virginia,* 259 Va. at 69, 523 S.E.2d 496 ("[I]n construing contract documents as a whole ... when two provisions of a contract appear to be mutually conflicting, they should be reconciled if a reasonable basis for reconciliation is afforded by the instrument's language.") (citing *Hutchison v. King,* 206 Va. 619, 624–25, 145 S.E.2d 216 (1965)). In such circumstances, one document should not be construed so as to negate or nullify the provisions of another document within the same business transaction, but rather, multiple documents from the same transaction should be construed together as one contract. *See id.*

## C. The "Plain Meaning" Rule

■ As discussed previously, Virginia courts follow the "plain meaning" rule in the context of contract interpretation. *See Appalachian Power Co.,* 236 Va. at 295, 374 S.E.2d 10. This rule stipulates that "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Berry,* 225 Va. at 208, 300 S.E.2d 792 (quoting *Globe Iron Const. Co. v. First Nat. Bank of Boston,* 205 Va. 841, 848, 140 S.E.2d 629 (1965)). Even when the "plain meaning" rule renders what some may consider a harsh result, courts are still not at liberty to rewrite the contractual language. *See Dominick v. Vassar,* 235 Va. 295, 300, 367 S.E.2d 487 (1988).

■ At a hearing conducted on February 17, 2000, both parties conceded in open court that the contractual language in the Loan and Security Agreement and the Deed of Trust is clear and unambiguous. This Court has reviewed each document and agrees with this conclusion. In light of this finding, the Court's inquiry into the parties' contractual intent must be confined solely to the loan documents themselves. *See Berry,* 225 Va. at 208, 300 S.E.2d 792.

Nevertheless, Foothill argues on appeal that it never conceded that the Loan and Security Agreement and Deed of Trust were "unambiguous in all circumstances." Instead, Foothill argues that only "when properly interpreted, the language of the documents is unambiguous." Foothill further argues that because the Bankruptcy Court's ruling does not represent the parties' true intent, this case should be remanded to the Bankruptcy Court to clarify that true intent.

■ However, to the extent that Foothill is attempting to retract its courtroom representation that the contractual language is unambiguous, this Court will not entertain such attempts. This Court upholds the equitable doctrine of judicial estoppel which prevents a party from "blowing hot and cold as the occasion demands." *King v. Herbert J. Thomas Memorial Hosp.,* 159 F.3d 192, 196 (4th Cir.1998) (quoting *Lowery v. Stovall,* 92 F.3d 219, 223–25 (4th Cir.1996)). Foothill's assertions to the contrary are simply not supported by the loan documents. Accordingly, this Court finds that the contractual language is unambiguous.

## D. The Parties' Contractual Intent

■ Reviewing the loan documents as a whole, the Court finds a clear and unambiguous contractual intent to encumber both Greentree Site personal and real property under the Deed of Trust. Therefore, to the extent that Greentree Site personal property is also encumbered by

the Loan and Security Agreement, Foothill's security interests overlap. Furthermore, in examining both documents as a whole, the Court finds an additional contractual intent to accord special treatment to a discrete class of East Coast property. In other words, through the Deed of Trust, the parties have chosen to delineate special contractual provisions that apply only to Greentree Site personal and real property. In fact, multiple pages of the Deed of Trust are solely dedicated to describing Greentree Site personal and real property encumbered by the Deed of Trust's contractual provisions.

Nevertheless, each party urges upon the Court one of two alternative contractual interpretations regarding the impact and extent of the Deed of Trust lien limitation on Greentree Site personal property. Under the Committee's interpretation, the Deed of Trust lien limitation caps Foothill's recovery from sales of Greentree Site personal and real property regardless of whether Foothill invokes its rights to recovery under the Deed of Trust or Loan and Security Agreement, and despite the fact that the Loan and Security Agreement has no lien limiting provision. Alternatively, under Foothill's interpretation, the Deed of Trust lien limitation does not cap Foothill's recovery on Greentree Site personal property sales because Foothill contends that it can invoke its rights to recovery under the Loan and Security Agreement despite the fact that the Deed of Trust includes a clear and unambiguous lien limiting provision.

■ Once again the Court must turn to Virginia rules of contract interpretation to resolve this issue. "It is the duty of the court to construe a contract as written ... and courts are bound to say that the parties intended what the written instrument plainly declares." *Wilson v. L.B. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 (1984) (dissenting opinion). The Court notes that a disagreement between parties as to the meaning that should be ascribed to contractual language does not transform an unambiguous contract into an ambiguous one. *See Dominion Savings Bank v. Costello*, 257 Va. 413, 416, 512 S.E.2d 564 (1999) (citing *Ross v. Craw*, 231 Va. 206, 212–13, 343 S.E.2d 312 (1986)). In the instant action, the Court finds that the contractual language is not rendered ambiguous, and as a result, the construction Foothill urges must fail.

Under Foothill's interpretation, the Deed of Trust lien limitation would be rendered completely meaningless as to Greentree Site personal property, and Foothill's recovery amount on such property would be unlimited despite the unambiguous provisions of the Deed of Trust. Foothill's interpretation would construe the loan documents as two separate contracts rather than a unitary expression of contractual intent; and given that both documents were contemporaneously executed in the same business transaction, a harmonious construction is required. Additionally, the Court finds that the descriptions of Greentree Site personal property included within the Deed of Trust are more specific than the general descriptions of East Coast personal property included within the Loan and Security Agreement. Consequently, the provisions of the Deed of Trust should preempt those of the Loan and Security Agreement to the extent that a conflict concerning Greentree Site personal property exists. *See Bott v. Snellenburg & Co.*, 177 Va. 331, 339, 14 S.E.2d 372 (1941) (citation omitted).

Finally, the Court notes that "[w]ords of exclusion not contained [with]in a contract cannot be read into it." *Montague Mfg. Co. v. Homes Corp.*, 142 Va. 301, 311–12, 128 S.E. 447 (1925). Therefore, this Court cannot effectively eliminate the Deed of Trust lien limitation as it applies to Greentree Site personal property because the lien limitation was clearly intended by the parties in the Deed of Trust. In the instant action, "the language of the documents contemplates that both must be read together to set forth the full understanding of the parties, and ... neither

one standing alone constitute[s] a complete contract." *First Am. Bank of Virginia,* 259 Va. at 67, 523 S.E.2d 496.

However, under the Committee's interpretation, both documents are construed as a unitary expression of contractual intent because the amount of Foothill's recovery from Greentree Site personal property sales is consistent under both documents and comports with the parties' unambiguously expressed intent in the Deed of Trust. As discussed previously, Virginia rules of contract interpretation require such a harmonious construction. Therefore, this Court finds that the Deed of Trust lien limitation encumbers all personal property collateral at the Greentree Site, notwithstanding the fact that such property is also encumbered by the Loan and Security Agreement which includes no lien limiting provision.

This is the most plausible and consistent construction to be given to both documents without rendering provisions from either document meaningless, or treating both documents as two separate loan contracts rather than a single contractual agreement. Consequently, Foothill's total recovery on personal and real property sales at the Greentree Site may not exceed the $1,400,000 lien limitation, plus interest and allowable fees and costs. Even if Foothill believes this outcome to be harsh, the Court is not at liberty to change the result. *See Daugherty,* 238 Va. at 525, 385 S.E.2d 572.

### E. Cumulative Remedies Provisions

■ Foothill further argues that the Committee's interpretation of the loan documents effectively nullifies its cumulative remedies provisions. The Committee counters this assertion by arguing that its contractual interpretation gives the cumulative remedies provisions in each document their common and ordinary meaning as demonstrated in the Uniform Commercial Code, case law and the loan documents themselves.

The Court finds that Foothill misconstrues the fundamental and ordinary purpose behind a cumulative remedies provision. Under the Uniform Commercial Code ("UCC"), secured parties have traditionally enjoyed several remedies upon the default of a debtor. Those remedies include the ability to foreclose, repossess, retain or dispose of secured collateral, and to reduce a claim on the underlying debt to judgment. *See* Va.Code Ann. § 8.9–501; Note, *Cumulative Remedies Under Article 9 of the Uniform Commercial Code: An Answer to Fuetes v. Shevin,* 14 Wm. & Mary L.Rev. 213, 217 (1972). By making these remedies cumulative, a creditor is no longer required to elect one remedy when seeking relief. *See id.* The Court notes that none of these remedial rights granted under the Virginia UCC, and none of those granted by the loan documents themselves, are nullified or negated by this Court's ruling. Nor is Foothill restricted in the types of remedies it utilizes to collect on its underlying debt, or in how many remedies it concurrently or successively pursues. Instead, consistent with the parties' contractual intent, only Foothill's right to recover from Greentree Site personal property sales has been limited in accordance with the unambiguous provisions of the Deed of Trust. Therefore, with Foothill's total recovery as to Greentree Site personal property sales limited only by the parties' contractual intent, Foothill's assertion that the Bankruptcy Court's ruling effectively nullifies its cumulative remedies provisions is without merit. Accordingly, this Court **AFFIRMS** the Bankruptcy Court's Memorandum Opinion and Order dated May 19, 2000.

### IV. CONCLUSION

For the foregoing reasons, the May 19, 2000 Memorandum Opinion and Order of the Bankruptcy Court for the Eastern District of Virginia is **AFFIRMED**. Furthermore, for the reasons outlined previously, the Committee's Motion to Strike is **DENIED.**

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**