COURT OF APPEALS OF VIRGINIA

Present:   Judges Annunziata, Kelsey and Senior Judge Overton
Argued at Salem, Virginia

SHAHNAZ M. AHMED

v.      Record No. 0256-04-3

SYED A. AHMED                                     MEMORANDUM OPINION[*] BY
                                                  JUDGE NELSON T. OVERTON
SYED M. AHMED                                       OCTOBER 12, 2004

v.      Record No. 0269-04-3

SHAHNAZ A. AHMED


            FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                      William N. Alexander, II, Judge

            Ronald S. Evans (Lawrence D. Diehl; Betsy H. Phillips, on briefs),
            for Shahnaz M. Ahmed.

            Richard L. Locke (Robert W. Partin; Locke & Partin, PLC, on
            briefs), for Syed A. Ahmed.


        Shahnaz M. Ahmed (wife) and Syed A. Ahmed (husband) appeal from a final decree of

divorce entered December 31, 2003.  On appeal, husband contends the trial court erred by (1)

ruling he failed to establish that the parties' separation agreement "was unconscionable or

entered into under fraud or duress," (2) "finding that there was no reconciliation between the

parties and interpreting/effectuating the Agreement based on that erroneous finding," (3) finding

wife had an interest in husband's medical practice, (4) determining wife's interest in the former

marital residence, (5) awarding attorney fees to wife, and (6) reinstating the prior divorce case

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"after the parties reconciled and dismissed the case by an agreed order." Husband also seeks attorney's fees and costs relating to these appeals.

Wife contends the trial court erred by ruling (1) certain assets were husband's separate property and were not to be divided according to the parties' written separation agreement, (2) the London apartment was husband's separate property and was not purchased using marital funds, and (3) "the attempted reconciliation . . . eliminated [husband's] obligations to the children for their educational costs . . . ." She also seeks attorney's fees and costs related to these appeals.

For the following reasons, we affirm the trial court's rulings.

BACKGROUND

The parties married on November 22, 1974. Four children were born of the marriage, all of whom were emancipated at the time of the entry of the final decree of divorce. The parties separated in the fall of 1999, and wife filed a bill of complaint seeking a divorce from husband on October 19, 1999. On March 8, 2000, the parties entered into a "marital agreement and stipulation" purporting to "adjust and settle" their "rights and obligations." In June 2000, the parties resumed cohabiting and lived together until September 2001, at which time they separated permanently.

In a July 19, 2000 consent order, the court "affirmed, ratified and incorporated, but not merged, by reference" pursuant to Code § 20-109.1, the parties' marital agreement. On January 11, 2001, by agreement of the parties, the court removed wife's case from its active docket. Following the execution of the marital agreement, the parties implemented many portions of it, by, for example, transferring the deed of the marital residence to wife, dividing certain jointly held accounts, and transferring or selling a part of husband's medical practice.

On September 17, 2002, husband filed a bill of complaint seeking a divorce from wife. In his bill of complaint, husband acknowledged the execution of the marital agreement, its previous

incorporation in wife's case, and he requested that the terms of the agreement "be implemented to the extent not previously implemented by the parties."

On October 10, 2002, husband filed an amended bill of complaint asserting the marital agreement was void as being unconscionable, that wife had failed to disclose significant marital assets, that the agreement was executed under duress, and that a fraud had been perpetrated in its procurement based upon an alleged reliance on a reconciliation between the parties.

On October 30, 2002, wife filed a petition to reinstate her case "in order to enter such orders as are necessary to complete the divorce action between the parties and to complete the effectuation and enforcement of the parties' written agreement dated March 8, 2000 . . . ."

At a July 22, 2003 hearing, the court heard evidence on the validity of the agreement. At the conclusion of the hearing, the court granted wife's motion to strike, finding the agreement valid. On November 25, 2003, the court heard evidence on the issue of the interpretation of the agreement. In its December 31, 2003 final decree, the court consolidated the two cases and granted wife a divorce from husband.

## ANALYSIS

### Validity of the Agreement

"[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980) (citation omitted); Derby v. Derby, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989). Therefore, in this case, [husband] "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989).

Webb v. Webb, 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993).

Husband asserts the trial court should have set aside the agreement as unconscionable.

> [U]nconscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. A party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts of equity may refuse to enforce it.

Derby, 8 Va. App. at 28, 378 S.E.2d at 78. However, "[c]ourts cannot relieve one of the consequences of a contract merely because it was unwise." Owens v. Owens, 196 Va. 966, 974, 86 S.E.2d 181, 186 (1955). Appellant asserts the distribution of assets as outlined in the agreement is grossly disproportionate as wife received approximately seventy percent of the marital estate. Husband represents that wife received approximately $12,000,000 more of the estate than he did.

The agreement itself provides:

> WHEREAS this Agreement is entered into voluntarily, without duress or coercion, for valuable consideration, after due and considered deliberation, no representations of fact or otherwise having been made by either party to the other except as herein expressly set forth, and each party considers the terms of this Agreement and Stipulation to be fair and equitable and not unconscionable.

The record reveals the agreement was negotiated between the parties over a period of several months while they were both represented by counsel. Husband's counsel was present when husband signed the agreement. The record reveals husband was experienced with managing his wealth. He states the "value [of the assets] was increased through [his] efforts." He was aware of the extent of his wealth, was counseled during the negotiation of the contract, understood the terms of the agreement, and voluntarily executed the contract.

Husband's assertions that he was misled by wife's representations that she would not seek to enforce the agreement are belied by his initial request, in his original bill of complaint, following the parties' failed reconciliation attempt, for the court to enforce the martial agreement. Additionally, in July 2000 husband agreed to have the court affirm, ratify and

- 4 -

incorporate the agreement in the case initiated by wife. He also willingly began executing the agreement by dividing and re-titling property pursuant to its terms.

The agreement specifically, provides it "contains the entire understanding of the parties, and there are no representations, warranties, covenants, or understanding other than those expressly set forth herein." Husband's supposed reliance on alleged representations by wife that are not included in the agreement is not supported by the record; particularly the pre-agreement correspondence between the parties' counsel.

Husband introduced the testimony of Dr. Lynn Carson Blackwood, Jr., a clinical psychologist. Blackwood examined husband and concluded husband's cognitive functions were impaired when the parties signed the marital agreement. The trial court "was not impressed at all with Blackwood's testimony," and found "the weight to be given to [the testimony] is nil." "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Husband's former counsel testified he advised husband throughout the negotiations of the agreement and repeatedly counseled husband not to sign the agreement. On February 28, 2000, husband signed a letter drafted by his counsel stating he understood that "when the Agreement is executed it will be binding on [him], and there are no assurances whatsoever that [wife] will reconcile with [him]."

The evidence failed to establish that wife coerced husband into signing the agreement. Husband was repeatedly advised not to sign the document and acknowledged understanding wife was not obligated to reconcile. The record, thus, supports the trial court's finding that the

agreement constituted a valid contract and was one entered into freely and voluntarily by both

husband and wife.[1]

Reconciliation

The marital agreement provides in Section 6.3 as follows:

> Effect of Reconciliation. In the event of reconciliation and
> resumption of the marital relationship between the parties, the
> provisions of this agreement for settlement of property rights,
> spousal support, debt payments and all other provisions not
> relating to their children, shall nevertheless continue in full force
> and effect without abatement of any term or provision hereof,
> *except as otherwise provided by written agreement duly executed
> by each of the parties after the date of the reconciliation.*

(Emphasis added.)

The agreement also provides in Section 2.2(A), concerning the marital residence, in

pertinent part:

> As to said marital residence, the parties agree that Wife
> shall have the sole use and possession of the residence, and any
> future occupancy thereof by Husband shall be at the sole authority
> and discretion of Wife. Should Husband resume his occupancy of
> said residence with Wife's consent, *whether in the nature of a
> reconciliation or a mere cohabitant without reconciliation*, Wife
> shall continue to have the sole authority, at her sole discretion, to
> require Husband to immediately vacate the residence and upon
> such demand by Wife, Husband shall be required to vacate the said
> residence within a week.
>
> The parties further agree that *in the event a reconciliation
> does not occur between the parties, and a final division of the*

---

[1] We note that at the conclusion of the hearing, wife's counsel moved the court to strike the evidence. It appears from the record that the court addressed the probative weight of the evidence and issued a ruling on the merits, rather than employ the standard governing motions to strike. See Central Virginia Obstetrics v. Whitfield, 42 Va. App. 264, 281 n.7, 590 S.E.2d 631, 637 n. 7 (2004) (observing that, when presented with a motion to strike, the only issue is whether "the plaintiff has not made out a *prima facie* case," and thus, "the judge does not ask whether he personally believes that the evidence rises to a preponderance — rather, he asks whether the conclusion the plaintiff draws from the evidence would so 'defy logic and common sense' that no rational factfinder could adopt it"). Husband does not challenge the court's action, and we find no error in the trial court's converting a motion to strike to a decision on the merits, in the context of a bench trial.

> *marital assets is implemented*, that Wife shall have the right to
> retain the marital residence as her sole and separate property
> subject to Husband's right to receive a 30 percent share of the fair
> market value of the marital residence.

(Emphasis added.)  Similarly, Section 2.7, addressing husband's medical practice provides, in part, that

> *[i]n the event a reconciliation does not occur*, the Wife shall be
> entitled to an award of 70% of the value of the Husband's medical
> practice known as Danville Cardiology center . . . .  The parties
> agree that they shall defer any division of said medical practice and
> its valuation, *but in the event of any future divorce being entered
> into between the parties*, that Wife shall be entitled to a monetary
> award in the amount of 70% of the fair market value of the said
> medical practice, or any additional or successor practice in which
> the Husband had an interest at the time of the divorce.

(Emphasis added.)

Husband argues the parties "reconciled" and that wife was therefore not entitled to seventy percent of the value of the marital residence or seventy percent of the value of husband's medical practice.  The trial court concluded that husband and wife "attempted" to reconcile, but that the attempt failed, that the reconciliation was not permanent, and therefore the limiting provisions in the two noted subsections did not take effect.  We agree with the trial court's interpretation of the contract.

While the court "should not undertake to construe away the plain letter of a contract," Seward v. American Hardware Co., 161 Va. 610, 625, 171 S.E. 650, 659 (1933), where the language of a contract is susceptible of more than one construction, it is the duty of the court to construe the language of the agreement, pursuant to established rules of construction.  Great Falls Hardware Co. of Reston v. South Lakes Village Ctr. Associates, 238 Va. 123, 125-26, 380 S.E.2d 642, 643 (1989).  In construing a contract the intention of the parties must be ascertained from the entire instrument, as expressed in or fairly implied in the writing.  Bott v. N. Snellenburg & Co., 177 Va. 331, 338, 14 S.E.2d 372, 374 (1941).  All the provisions of a

contract shall be taken into consideration and reconciled, if possible, so that the true intent of the parties to the contract may be ascertained. Id. at 339, 14 S.E.2d at 374; Justice v. Stuyvesant Ins. Co., 265 F. Supp. 63, 65 (S.D. W.Va. 1967) ("A desire to effectuate the intentions of the parties creates the necessity of looking to the constituent elements of the contract, elucidating one by the other and reconciling them, if practicable, to one common intent or design present to the minds of the contracting parties."). "It is a well-recognized principle that a contract should be construed as a whole, thereby gathering meaning from its entirety and not from particular words, phrases or clauses." Northern Virginia Sav. & Loan Ass'n v. J.B. Kendall Co., 205 Va. 136, 142, 135 S.E.2d 178, 183 (1964); see also Roanoke Marble & Granite Co. v. Standard Gas & Oil Supply Co., 155 Va. 249, 254, 154 S.E. 518, 520 (1930).

"In reconciling . . . provisions, any apparent inconsistency between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter." Chantilly Constr. Corp. v. Commonwealth, 6 Va. App. 282, 294, 369 S.E.2d 438, 445 (1988); see also Bott, 177 Va. at 339, 14 S.E.2d at 374-75 ("[W]here there is a repugnancy, a general provision in a contract must give way to a special one covering the same ground."). In construing contract documents as a whole, the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it. The contract must be construed so as to give effect to every part of it, as parties are not presumed to have included a provision of no effect. Ross v. Craw, 231 Va. 206, 214, 343 S.E.2d 312, 317 (1986); see also First Am. Bank of Virginia v. J.S.C. Concrete Constr., Inc., 259 Va. 60, 69, 523 S.E.2d 496, 501 (2000). Thus, "when two provisions of a contract appear to be mutually conflicting, they should be reconciled if a reasonable basis for reconciliation is afforded by the instrument's language." First Am. Bank, 259 Va. at 69, 523 S.E.2d at 501.

Section 6.3 of the agreement provides that, unless otherwise provided in a "written agreement duly executed by each of the parties *after the date of the reconciliation*," the provisions of the agreement shall continue in full force. The specific provisions of Sections 2.2(A) and 2.7 were not executed after the date of the purported reconciliation. Instead, the provisions were added to the original agreement prior to its execution by the parties before the attempted reconciliation.

Read together, the plain language of the contract envisions a successful reconciliation in order to trigger the limiting provisions added to the two sections. Section 2.2(A) allows for the possibility that the parties could cohabit "without reconciliation" and, in the second quoted paragraph, contemplates the seventy-thirty division of the property in the event "a final division of the marital assets is implemented" and a reconciliation does not take place. Indeed, when the reconciliation attempt failed, the parties sought a final division of the martial assets. Likewise, Section 2.7 of the agreement references "any future divorce being entered into between the parties," and provides wife with seventy percent of the value of husband's existing medical practice "or any additional or successor practice in which the Husband had an interest at the time of the divorce." The parties clearly contemplated a permanent reconciliation in order to activate the limiting provisions.

Instead, the parties' period of cohabitation was "a mere conditional, experimental, and temporary living together of the parties, without any intention to abandon the agreement . . . ." Barnes v. American Fertilizer Co., 144 Va. 692, 724, 130 S.E. 902, 912 (1925). See Smith v. Smith, 19 Va. App. 155, 156, 449 S.E.2d 506, 506 (1994) (finding a nine-month period of cohabitation following a separation of the parties was merely an "unsuccessful reconciliation attempt"). We find no error in the trial court's interpretation of the contract provisions concerning reconciliation.

<u>Reinstatement of Wife's Case</u>

Husband argues the trial court erred by reinstating wife's original divorce action.

> In any suit which has been stricken from the docket, and in which complete relief has not been obtained, upon the motion or application of either party to the original proceedings, the same shall be reinstated upon the docket for such purposes as may be necessary to grant full relief to all parties.

Code § 20-121.1.

Husband cites no support for his contention that "Code § 20-121.1 does not provide grounds for reinstatement" of wife's case. He asserts the attempted reconciliation between the parties eliminated "any cause of action that might have otherwise existed as set forth" in wife's bill of complaint.

As part of the Qualified Domestic Relations Order entered January 11, 2001, wife's case was "removed from the active docket of th[e] Court and placed among the ended causes herein." Because "complete relief ha[d] not been obtained" in the case, as the order did not address all the issues raised in the bill of complaint, the trial court permissibly reinstated wife's case pursuant to Code § 20-121.1.

<u>Attorney's Fees Award</u>

Husband argues the trial court erred by awarding wife attorney's fees following his challenge to the validity of the marital agreement.

The agreement states:

> 5.2 <u>Attorney's Fees</u>. Each party agrees to pay their own attorney's fees incurred by themselves in connection with the preparation of this Agreement and for any action for divorce *a vinculo matrimonii* in accordance with Paragraph 5.1 of this Agreement. The parties further agree that in the event either party defaults under the provisions of this Agreement, the defaulting party shall be liable for all expenses incurred by the non-defaulting party in connection with the enforcement of this Agreement, including, but not limited to all legal fees, court costs, and travel expenses.

"The noun 'default' is defined as a 'failure to do something required by duty or law.'" Clevert v. Soden, Inc., 241 Va. 108, 111, 400 S.E.2d 181, 183 (1991) (quoting Webster's Third New International Dictionary 590 (1986)) (holding that breach in performing contract would be default). The agreement contained provisions averring that: (a) the parties were represented by counsel; (b) they entered the agreement "voluntarily, without duress or coercion, for valuable consideration, after due and considered deliberation"; and (c) "no representations of fact or otherwise having been made by either party to the other . . . each party considers the terms of this Agreement and Stipulation to be fair and equitable and not unconscionable." Moreover, Section 5.1 of the agreement requires each party to agree "to petition the Court to affirm, ratify and incorporate the provision of this Agreement," if a final decree of divorce is awarded to either party.

Despite affixing his signature to the agreement which contained the above-mentioned representations, husband alleged that the signed agreement was unconscionable and is not a valid, proper and fair agreement. Thus, he attempted to have the contractual provisions voided, thereby requiring wife to obtain legal assistance to enforce the contractual provisions. Therefore, the trial court did not err in finding husband in default in fulfilling his obligations pursuant to the agreement and in awarding attorney's fees.

Husband's Separate Property

Wife argues the trial court erred by "ruling that assets listed in the revised Exhibit A . . . were the separate property of" husband and "ruling that the London apartment was the separate property of [husband] and was not purchased from marital funds."

Section 2.6 of the agreement states, in pertinent part:

> The parties have agreed between them, to their mutual satisfaction, as to ownership, possession, and use, of any and all monies, securities, notes, investment accounts, profit-sharing plans, IRAs, and negotiable instruments of any kind which are current on deposit, or which may have been on deposit in the past.

Specifically, the parties agree that Wife shall be entitled to the sum of seventy percent (70%) of the value on the date of division . . . of the investment and accounts as listed on "Exhibit A" as items B(1), B(2), B(3), B(4), B(5), B(6) and B(7), which value shall be based upon the fluctuating value thereof.

Exhibit A to the agreement encompasses a summary of the parties' assets. It lists, in separate sections, the parties' real estate, investments, and bank accounts. The division of the real estate is addressed separately in the agreement, and those assets are not a subject of this appeal. In addition to the exhibit items listed in the above-quoted section, Exhibit A lists as "investments" items labeled B(8) through B(12). Items labels C(1) and C(2) are listed as "bank accounts." Item B(8) is husband's cardiology center and is addressed separately in the agreement, as noted above.

Wife asserts that items B(9), B(10), B(11), B(12), C(1) and C(2) should also have been divided by the trial court, with her receiving seventy percent of their value. She contends that, due to a mutual mistake, the items were not specifically listed in Section 2.6 of the agreement.

"A contract may be reformed or rescinded in equity on the ground of mutual mistake." Langonan v. Alumni Assoc. of the Univ. of Virginia, 247 Va. 491, 503, 442 S.E.2d 669, 677 (1994). To prevail on a claim of mutual mistake, husband had the burden to present proof which was "clear, convincing, satisfactory, and such as to leave no reasonable doubt on the mind that the writing does not correctly embody the intention of the parties." Dickenson County Bank v. Royal Exch. Assurance, 157 Va. 94, 104, 160 S.E. 13, 16 (1931).

The trial court heard the testimony of the parties and their attorneys regarding the drafting of the agreement. The record supports the trial judge's finding that wife failed to establish by clear and convincing evidence that the exclusion of the specified assets was the result of a mutual mistake of fact by the parties. Accordingly, we affirm the decision of the trial judge that the

- 12 -

assets not specifically listed in Exhibit A of the agreement remain the separate property of husband.

Likewise, the court correctly concluded the London apartment, purchased by husband after the agreement had been executed with funds from his separately held account was husband's separate property. The parties' agreement purports to be "a full and complete settlement of all property rights between them and their right to equitable distribution . . . ." Accordingly, because husband purchased the apartment using his separate funds after the execution of the agreement, the apartment, too, remains his separate property.

Education Costs

Wife argues "the trial court erred in interpreting the term 'children' in paragraph 6.3 of the Agreement and in refusing to admit parol evidence to explain its intent within the terms and meaning of the Agreement."

Section 6.3 of the marital agreement provides as follows:

> Effect of Reconciliation. In the event of reconciliation and resumption of the marital relationship between the parties, the provisions of this agreement for settlement of property rights, spousal support, debt payments *and all other provisions not relating to their children*, shall nevertheless continue in full force and effect without abatement of any term or provision hereof, except as otherwise provided by written agreement duly executed by each of the parties after the date of the reconciliation.

(Emphasis added.)

The trial court concluded the agreement was not ambiguous and that the parties' attempted reconciliation eliminated husband's obligation, under Section 4.2 of the agreement, to pay the college expenses "for each child."

Wife argues the term "children" as used in the agreement means only "children under the age of eighteen." However, throughout the agreement the term "children" is modified by terms such as "minor" or "after the emancipation of." Because the term "children" was not modified in

- 13 -

the reconciliation section, the trial court properly concluded there was no ambiguity, that the term referred to all the parties' off-spring, and was not limited to "minor" children. Wife does not argue the parties' attempted reconciliation failed to trigger the limiting provision in Section 6.3 of the agreement. Therefore, we need not address the court's conclusion that the attempted reconciliation activated the limiting provision.

"[P]roperty settlement agreements are contracts and subject to the same rules of . . . interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986).

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are not bound to say that the parties intended what the written instrument plainly declares."

Hendrick v. Hendrick, 3 Va. App. 452, 455-56, 350 S.E.2d 526, 528 (1986) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). Thus, "[w]here there is no ambiguity in the terms of a contract, we must construe it as written" and give its terms their plain and ordinary meanings. Smith, 3 Va. App. at 514, 351 S.E.2d at 596.

Read in its entirety, the contract presents no ambiguity concerning the meaning of the term "children." The term was not modified in the reconciliation section, as it is in other parts of the contract. The court correctly concluded the term referred simply to the children born of the marriage and was not limited in any way. We find no error in the court's ruling.

### Attorney's Fees on Appeal

Both parties request costs and attorney's fees for matters relating to this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine

>whether the appeal is frivolous or whether other reasons exist for
>requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  In this context, and upon consideration of the entire record in this case, we hold that neither party is entitled to costs or attorney's fees in the matter.

For the reasons stated above, we affirm the final order of the trial court.


<u>Affirmed.</u>