## Staunton.

ATLANTIC & DANVILLE RAILWAY CO. v. DELAWARE CONSTRUCTION CO.

SEPTEMBER 13, 1900.

1. CONTRACTS—*Time of Essence—Delay—Case at Bar.*—Although time be of the essence of a contract, no damages can be allowed to a plaintiff for delay caused by his own fault. A provision in a contract " that no claim for extra work or delay will be allowed " unless excessive, in which event the parties shall agree upon the extra compensation, and upon the extension of time necessary, could not have been intended, and cannot be construed, to cover a delay caused by the fault of the plaintiff, although there was no agreement as to the extension necessary.

2. CONTRACTS—*Breach—Estimated Profits.*—In an action to recover damages for failure to complete a pier in a given time, the estimated gains or profits that the plaintiff might have made on the handling of freight that he was compelled to decline, in consequence of noncompletion, are too remote and speculative to be recovered.

3. CONTRACTS—*Entire—Severable.*—Whether a contract is entire or severable must be determined in each case from the language employed, and the subject-matter of the contract. No precise and invariable rule can be laid down. Reservation of a percentage until the whole is completed would seem to indicate an entire contract.

4. CONTRACTS—*Entire—Severable—Destruction of Work.*—As a general rule, in the case of an entire contract, the whole work must be completed and delivered in a state of completion, before there can be a demand of payment, and if any part of it has been destroyed by accident or act of God before that time, the loss must be borne by the contractor. It is different where one contracts to do a particular part of the work in the construction of a building, and the building is destroyed before completion. In that case he is excused from further performance of the contract, and may recover.

5. CONTRACTS—*Building—Completion—Acceptance.*—If the owner of a building takes possession thereof, and occupies and uses the same

Opinion.

for his purposes, without objection as to the completion of its construction, his acceptance thereof will be implied. Formal acceptance is not necessary.

6. BUILDING CONTRACTS—*Extra Work—Agreement.*—The provision of a building contract that no claim for extra work shall be allowed unless excessive, in which event the compensation therefor shall be agreed on between the parties, is obligatory on the parties to the contract, and, in the absence of any agreement that there was any extra work, or that any compensation for work claimed to be extra work was agreed upon, there can be no recovery therefor.

7. APPEAL AND ERROR—*Error Must be Shown.*—This court will not reverse the judgment of the trial court unless it is satisfied that such judgment is wrong. It is not sufficient to doubt its correctness.

Appeal from a decree of the Law and Chancery Court of the city of Norfolk, pronounced October 4, 1898, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*A. P. Thom*, for the appellant.

*T. S. Garnett*, for the appellees.

(The opinion was prepared by Judge Riely before his death, and subsequently adopted as the opinion of the court.)

RIELY, J.*

An agreement in writing was entered into on August 30, 1894, between the Atlantic and Danville Railway Company and Rutherford & Brown, contractors, whereby the latter agreed and contracted to furnish all materials and labor for, and to construct, according to prepared plans and specifications, certain docks, piers, and warehouse, and to do certain dredging, for the said Railway Company, at its western terminus at Norfolk, and to remove such old docks and pier work as was shown on the

---

*Judge Riely died August 20, 1900.

plans by dotted lines. The work was to be completed within four months from the date of the contract—to-wit, on December 30, 1894.

The contractors employed the Delaware Construction Company, as sub-contractor, to do the work, which it did not complete within the specified time, and does not claim to have done until about five months thereafter, until early in the following June.

This suit was brought by the Railway Company, among other objects, to recover from the contractors damages for the delay in completing the work, and for the failure to complete the work as required by the contract; and the contractors sought by cross-bill to recover from the complainant the percentage of moneys withheld from them on the monthly estimates of the work as it progressed, compensation for alleged extra work done and materials furnished therefor at the instance and request of the Railway Company, and damages for the failure and refusal of the Railway Company to give them proper facilities for the performance of the work. Upon the hearing of the cause, the court below adjudged that the complainant company was indebted to the contractors in the sum of $7,324.47, with interest from June 7, 1895, and for this sum entered a decree against it in favor of the contractors.

From this decree an appeal was taken to this court by the Railway Company.

The first assignment of error is to the adjudication by the court that the Railway Company was not entitled to any compensation for the failure of the contractors to complete the work within the time prescribed by the contract; and the claim is made that the court should at least have allowed the Railway Company two specific items of damage that will be hereinafter particularly referred to.

It cannot be well questioned, from the nature of the contract and the circumstances from which it arose, that time was an

important feature in the completion of the work, and that the Railway Company would be entitled to recover any damages it could satisfactorily prove, was the result of the failure of the contractors to complete the work within the time limit, provided such failure was not caused by the Railway Company.

The evidence in the case is very voluminous, and it is not practicable to go into a critical discussion of it within the limits of an opinion of reasonable length. We can only state the conclusion we have reached upon a careful perusal of it, and that is, that the delay was due to several causes, the many changes required by the Railway Company, through its officers, to be made in the execution of the work, the amount of dredging, which was not fixed by the contract, but merely estimated, and which turned out to be about double the amount of the estimate, but was mainly due, according to the preponderance of the evidence, to the interference by the Railway Company with the execution and progress of the work, by keeping possession of and continuing to use its property, whereon the improvements were being made. It was insisted in behalf of the Railway Company that such possession and use of its property was within the expectation and understanding of the parties, but it could not have been within their contemplation that there could be such retention and use of the property as to interfere with the progress of the work to such extent as is shown by the evidence.

It is provided in the contract that "no claims for extra work or delay will be allowed, unless such extra work or delay is excessive; in such event, the engineer and contractors shall agree upon the compensation for extra work, and upon the extension of the time necessary to complete it." It was claimed that no such agreement had taken place as was contemplated by the said provision, and strenuously argued that therefore the contractors could not escape liability for damages for the failure to complete the work within the time limit. The above provision of the contract could not have been intended, and cannot be

construed, to cover a case of delay that resulted from the fault of the Railway Company. It cannot take advantage of its own wrong. So much in response to the general claim of damages for delay.

The two specific items for which damages were specially claimed are founded upon the evidence of the general freight agent of the company, who testified that the company had been put to extra expense to the amount of $3,066.18, owing to the non-completion of the work, in handling 11,793 bales of cotton, which reached West Norfolk after December 30, 1894, and that it had been also deprived of the sum of $3,525, which would have been the net revenue on a shipment of 15,000 bales of cotton that it had to decline because the work had not been completed. As to the first item, in addition to what has been said as to the responsibility of the Railway Company for the delay of the contractors in completing the work, the claim of extra expense in handling the cotton referred to, even if it be admitted to be a proper ground of damage under the circumstances of this case, is not so satisfactorily proved by the evidence adduced in support of it that it can be said that the court below erred in refusing to allow it. As to the other specific item of damages claimed, it comes under the head of remote and speculative damages, and was properly disallowed. *Burruss* v. *Hines*, 94 Va. 413. It is altogether uncertain and wholly conjectural whether there would have been any gain or profit from the shipment of the 15,000 bales of cotton.

It is also proper to add that the president of the Railway Company testified that he had no intention of claiming any damages for delay until in March or April. He also stated that he was fully acquainted with the affairs of the company, and that it handled all passengers and freight that came to it during the progress of the work, and refused no business offered to it on account of the non-completion of the work within the time limit.

It is next assigned as error that the court did not allow to the Railway Company damages growing out of the destruction of the warehouse and Pier No. 1 and the trestle alongside of the pier, by fire, without the fault of either party, before the completion of the entire work, and which were not rebuilt by the contractors.

It was argued for the appellant company that the contract for the work was an entire and indivisible contract, and the warehouse, which was only a part of the work contracted to be done, having been burned before the completion of the whole work and its acceptance by the Railway Company, it was incumbent on the contractors to restore it, and, not having done so, the cost to the Railway Company of rebuilding it should have been allowed the company. On the other hand, it was contended for the appellees that the contract was not an entire, but a severable, contract, and the warehouse having been completed before its destruction, the loss must fall upon the Railway Company.

No precise or invariable rule can be laid down by which it may be determined whether the contract is entire or severable, for it is a question of construction as to the intention of the parties to be discovered in each case from the language employed, and the subject matter of the contract. 2 Parsons on Contracts, 517. An inspection of the contract in the case before us would seem to lead to the conclusion that it is an entire contract. *Quigley* v. *De Haas*, 82 Pa. St. 267, and *Cox* v. *Railroad Co.*, 44 Cal. 18. This, as was held in *Quigley* v. *De Haas*, would seem to be the intention of the parties from the incorporation into the contract of the provision that 10 *per cent.* of the monthly estimates should be withheld until the whole work was completed, and a final estimate made.

It is undeniably true, as a general rule, that in the case of an entire contract, the whole work must be completed and delivered in a state of completion before there can be a demand of pay-

ment, and if any part has been destroyed by accident or act of God before that time, the loss must be borne by the contractor. Where one contracts to furnish the materials and labor and to construct an entire work, he is not excused from the performance of the contract by the destruction of the work, whether from his own negligence or unavoidable accident. 29 Amer. and Eng. Enc. of Law (1st Ed.), 907; 1 Beach on Mod. Law of Contracts, sections 232, 1727; and *School Trustees* v. *Bennett,* 27 N. J. Law, 513. It is different where one contracts to do a particular part of the work in the construction of a building, and the building is destroyed before completion. In that case, he is excused from further performance of the contract, and may recover. *Clark* v. *Franklin,* 7 Leigh, 1.

It is, however, immaterial in this case whether the contract is entire or severable, for it is not controverted that the pier and trestle, which were burned at the same time as the warehouse, had been fully completed, and it satisfactorily appears from the evidence that the warehouse, with the exception of the skylight, which was the subject of a subsequent and separate contract, was likewise completed as originally contracted for, that it had been turned over by the contractors to the Railway Company, which had moved into and taken possession of it, and was using it for all the purposes for which it was intended and built. It is, however, contended that it had not been accepted by the Railway Company, and the superintendent and chief engineer of the company states in his deposition that he had meant to raise an objection to the weather-boarding upon the completion of the whole work, and when the final estimate was made, though no intimation of such intention was given until since the destruction of the property and the commencement of this controversy, and the existence of such proposed objection was unknown to the contractors. It is true that there had been no formal acceptance of the pier, trestle, and warehouse. This was not necessary, since the company had taken

possession thereof and was occupying and using the same for its purposes, without having made any objection to its construction. 1 Beach on Mod. Law of Contracts, section 109. Its acceptance, under such circumstances, is to be implied. The loss resulting from its destruction was properly placed by the court, below upon the Railway Company.

It is also assigned as error that the court did not allow in full the amount claimed by the Railway Company for the removal of certain old work, which it was the duty of the contractors to remove, but which they did not do. The whole claim was for $1,209.32. The court allowed only $207.82. This work has never been wholly removed by the Railway Company, but only in part, and it does not appear that it will be necessary to remove the residue, or that it will ever be removed. The amount allowed by the court is the expense incurred in removing the part that has been taken away, and this was all, under the evidence, that the railway company was entitled to have allowed.

It is further assigned as error that the court refused to allow the Railway Company the wages paid to its inspectors of the work after the time it should have been completed, according to the terms of the contract. In this, too, there was no error. The delay in the completion of the work being due mainly, as has been seen, to the obstruction of the work by the Railway Company in continuing to use its property whereon the work was to be done, and to carry thereon its regular business, and having also, by many acts and in various ways, waived the limit as to the time when the work was to be completed, and acquiesced in the delay that occurred, it was not entitled to claim against the contractors the wages it had paid its inspectors.

The last assignment of error is as to the skylight to the warehouse, the cost whereof was allowed the contractors by the court. The construction of the skylight was not a part of the work to be done under the original contract, but the Railway Company subsequently desired to have it put on, and contracted for its

construction by the Delaware Construction Company at 10 *per cent.* on the cost of the material and labor. The material was furnished by the contractors, and all the work was finished, except putting in the sashes, which arrived on the ground the day preceding the night when the warehouse was burned, and would have been immediately put in but for the destruction of the warehouse on the following night. The warehouse, pier, and trestle having been completed and impliedly accepted by the Railway Company, and become its property, it was its duty to replace the same before the Delaware Construction Company could be called upon to put in the sashes, and thus complete the skylight. The Construction Company was entitled to recover the cost and expense to which it had been put in constructing the skylight. *Clark* v. *Franklin*, 7 Leigh, 1; and *Cook* v. *Mc-Cabe*, 53 Wis. 250.

This disposes of all the assignments of error of the appellant company, and brings us to the consideration of the cross-errors assigned by the appellees.

The principal error complained of by them was the failure of the court to allow their claim for extra work.

It was provided in the contract, as we have heretofore seen, that no claim for extra work should be allowed unless such extra work was excessive; and if excessive, the compensation therefor should be agreed upon by the engineer of the Railway Company and the contractors.

This provision is based upon the assumption that there may be extra work, and in view of its possibility, it was stipulated that no claim therefor would be allowed unless the extra work was excessive, and in that event the compensation therefor must be previously agreed upon.

If it be conceded that there was extra work by the contractors, the above provision of the contract was not followed. It does not satisfactorily appear, upon a perusal of the evidence, that any work was agreed to be *extra* work, or that any compensa-

tion for work claimed to be extra work was agreed upon. No claim for extra work, if any there were, was therefore allowable, unless the said provision was duly waived. An obvious purpose of such a provision is to avoid subsequent disagreement, and prevent just such a controversy as has arisen in this case. This is intended to be accomplished by limiting the agency, and placing a restraint upon the powers of subordinate officers or employees. All are aware of the frequency with which it happens in the construction of buildings and other improvements that claims are made for alleged extra work, which give rise to disputes and litigation. Such a provision is a wise and not an unusual one in building contracts, and it is held by the authorities to be obligatory upon the parties, and not to be disregarded. *Shaw* v. *First Baptist Church*, 44 Minn. 22; *Woodruff* v. *Railroad Co.*, 108 N. Y. 39; *Baltimore Cemetery Co.* v. *Coburn*, 7 Md. 202; and *White* v. *Railroad Co.*, 50 Cal. 417.

It is clear that, independent of the aforesaid provision, the claim for extra material and work, except so far as it has been allowed by the company, cannot prevail. It is not sustained by the evidence. It appears from the record that James Riddle, a disinterested civil 'engineer, by the consent of all parties, was employed by the commissioner, who made the report upon the various matters in controversy, to ascertain and report from actual count and measurement the exact amount of work done by the contractors under the contract, and the court likewise had him make certain calculations from the record. From his reports, it appears that, instead of there being more, there was less material used by the contractors in the construction of the work contracted for by the Railway Company than the contract called for. The plans for the work called for 3,205 piles, of an average length of 35 feet, and it was ascertained by Mr. Riddle that only 2,582 piles were driven by the contractors, making a difference of 443 piles. The plans also called for 638,769 feet

of lumber, and it was ascertained by the said engineer that only 597,365 feet were used, a difference of 41,384 feet.

Permission is given in the contract to the engineer of the Railway Company to vary, at his discretion, the number and kind of piles, according to the schedule of prices affixed; and also to vary at his like discretion the quantity of lumber, and, if varied, an addition or deduction should be made to or from the contract price at $20.50 per thousand feet. The deficiency of 443 piles of the said length, at the schedule price of 14 cents per foot per pile, makes $2,170.70, and the deficiency in lumber of 41,384 feet, at $20.50 per thousand feet, makes $848.37, the two amounts aggregating $3,019.07. A deduction of this sum was made by the court from the contract price of the work, which was proper.

As to the claim of damages for being delayed in the execution of the work, the evidence upon which it is claimed is too uncertain and indefinite for the foundation of any judgment for damages. Any allowance would be simply conjectural. Whatever damage may have been sustained by the contractors on this account is, upon the testimony, beyond ascertainment with any degree of accuracy or approximation. And, besides, having acquiesced in the manner of doing the work and the consequent delay, the proof of damages thereby sustained should be very clear and satisfactory.

Nor can there be any recovery for the lumber alleged to have been left on the property of the Railway Company at West Norfolk by the contractors upon completing the work contracted for and moving away. The evidence is that it was so left, but the proof is wanting that it was used by the Railway Company.

We have now gone over the various questions and issues presented in this case. Their proper and just disposition has given the court much concern and trouble. Much time and pains have been given to their consideration. The record is large, the evidence voluminous, conflicting, and inconclusive, and we are

frank to say that the conclusions reached are not altogether free from doubt. They result, however, in the affirmance of the decree of the lower court, which must prevail, unless we are prepared to pronounce that it is erroneous. It is not sufficient for the appellate court to doubt the correctness of the decision complained of; it must be satisfied, in order to reverse the decision, that it is wrong. *Shipman* v. *Fletcher*, 91 Va. 527; *Smith* v. *Smith*, 92 Va. 696; and *Va. Coal and Iron Co.* v. *Thomas*, 97 Va. 527.

The decree appealed from must be affirmed.

*Affirmed.*