MᴄMᴇʀɪᴛ Cᴏɴsᴛʀᴜᴄᴛɪᴏɴ Cᴏᴍᴘᴀɴʏ

V.

Kɴɪɢʜᴛsʙʀɪᴅɢᴇ Dᴇᴠᴇʟᴏᴘᴍᴇɴᴛ Cᴏᴍᴘᴀɴʏ, Iɴᴄ.

Record No. 850441

April 22, 1988

Present: All the Justices

*Laurence Schor (Louis R. Moffa, Jr.; Thomas Earl Patton; Schnader, Harrison, Segal & Lewis*, on briefs), for appellant.

*Raymond J. Diaz (Jeremiah D. Lambert; Frederick W. Yette; Michael McGettigan; Kirkpatrick & Lockhart; Murphy, McGettigan & West, P.C.*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The issue in this appeal is whether, by executing documents known as contractor's affidavits, McMerit Construction Company ("McMerit") waived its right to file a mechanic's lien against property owned by Knightsbridge Development Company, Inc. ("Knightsbridge"). The trial court ruled that McMerit waived its lien rights. We disagree. Therefore, we will reverse the judgment of the trial court.

On July 11, 1983, Knightsbridge and McMerit entered into a contract for the construction of a 14-story condominium complex in Rosslyn, Virginia. Article 9 of the General Conditions of the Contract for Construction concerned "Payments and Completion." A specially drafted provision, subparagraph 9.5.6, was added to Article 9; it provided as follows:

Each application for a progress payment to be valid must be accompanied by a partial lien waiver and release, in form satisfactory to Owner, from the Contractor covering all work performed through the date of the previous months application together with, if requested by Owner, similar lien waivers from all subcontractors performing work under this Contract or otherwise on the job.

Knightsbridge supplied the forms to McMerit for use in making applications for payment. McMerit was required to sign a document designated "Contractor's Affidavit." That document did not contain the words "lien" or "waiver." It nowhere expressly states that it is a lien waiver. But it did provide as follows:

The CONTRACTOR *acknowledges receipt from OWNER of payment of all sums due* for work performed, labor and materials furnished or supplied to the date of the previous advance in connection with the construction of the Project. All subcontractors, contractors, suppliers, materialmen, laborers and workmen employed or engaged by the CONTRACTOR on the Project have been paid for all work previously performed for which payment has been made by or on behalf of OWNER, and all sums due for materials and supplies furnished to CONTRACTOR or for the Project have been paid for up to and including the period covered by the last preceding advance which was made on the *19th* day of *February*, 1985, in the amount of *$1,577,818.00.*

It is understood that this Affidavit and Sworn Statement together with attached Contractor Application for Payment No. *19* will be delivered by OWNER to TITLE INSURERS for the purpose of obtaining advances of money to or for the benefit of OWNER.

(Emphasis added). McMerit submitted 19 applications for payment including therewith 19 contractor's affidavits. If these affidavits constituted valid lien waivers, they would waive all liens for money owed prior to February 19, 1985.

By contrast, the form required of the subcontractors and materialmen was labeled, "Partial Affidavit, Waiver of Lien And Release." That document provided in pertinent part as follows:

The undersigned does hereby forever release and discharge the Company, the Building and the land upon which the Building is located, from any and all causes of action, suits, debts, liens, damages, claims, and demands whatsoever in law or equity which the undersigned and/or its assigns ever had, now have, or ever will have against the Company, the Building, and/or the land upon which the Building is located, by reason of the delivery of materials and/or the performance of work relating to the construction of the Building.

Over the course of the construction, disputes arose between McMerit and Knightsbridge concerning certain aspects of the work. McMerit contended that it was required to perform work and supply materials in excess of what was required by the contract. McMerit detailed many of its claims in a document entitled CPR 102. The parties reached agreement as to some of the disputed items and set forth the agreed-upon matters in a document entitled Change Order 30, dated December 20, 1984. That change order contained an attachment which reserved McMerit's right to advance the other claims which had been set forth in CPR 102, but not agreed to by Knightsbridge; the attachment provided in pertinent part as follows: "Execution and delivery of this change order shall not be construed to constitute waiver or abandonment of any claims, defenses, or other matters that might be asserted by either party in respect of CPR #102 or the subject matter thereof."

On February 27, 1985, McMerit filed a lien against the project in the amount of $603,710. Knightsbridge challenged the validity of that lien pursuant to Code § 43-17.1.

An evidentiary hearing was held on March 29, 1985. There, it was established that Knightsbridge had long been aware of McMerit's claims for additional pay. Knightsbridge's vice president, F. Pearson Ames, testified that when Change Order 30 was signed, it was intended by Knightsbridge to be a temporary settlement in anticipation of arbitration, but that Knightsbridge did not expect a lien to be filed. He testified that the reservation-of-right provision in Change Order 30 was included so that neither party would prejudice its rights in arbitration.

Ames also testified that the contractor's affidavit was the partial lien waiver called for in paragraph 9.5.6 of the general conditions of the contract. On cross-examination, Ames admitted knowing

that McMerit was making claims for additional monies at the same time it was filing pay requests acknowledging that it had been paid all sums due. He admitted further that the contractor's affidavits were never relied on by Knightsbridge to bar McMerit's claims for additional funds.

A representative of the title insurance company also testified. He stated that the contractor's affidavit was treated as a release of liens. He said further that his company first became aware of McMerit's claim for additional monies when McMerit filed its lien.

McMerit's project manager testified that the owner never advised McMerit that the contractor's affidavits meant claims could not be submitted. He refuted the statement in the contractor's affidavit that all payments had been made in a timely manner. When asked on cross-examination the significance of the contractor's affidavit, the project manager said it was a document McMerit was told it had to sign in order to get paid. He also testified that, at the time of trial, McMerit had not been paid all sums due for the costs of labor and materials supplied to the project.

McMerit's president testified that he never told Knightsbridge that McMerit intended to waive its lien rights with respect to the project. When he was asked what the contractor's affidavit was he stated as follows:

A. I think it's important to note it's a partial waiver of lien and not a general waiver of lien.

Q. By "partial waiver of lien," do you mean it's associated with the progress payments so that it relates to each prospective progress payment?

A. That would be correct.

At the conclusion of all the evidence, the trial court ruled as follows: "I am of the opinion that the papers submitted with requests for payment considered in the light of the contract and the actions of the parties constitute successive, partial lien-waivers by McMerit." The trial court, in explaining its ruling, noted that "[i]t is a fact of construction life that the parties know that on projects of this size lenders will not permit partial payments without releases of liens. The parties here contemplated that there would be partial lien-waivers . . . ." The trial court also relied on

the facts that McMerit filed the affidavit in order to get its draw of funds and that the affidavit acknowledged receipt of all sums due. The trial court went on to state as follows:

> It is true that nowhere in this affidavit or the other papers does McMerit say, we waive our mechanic's lien. But in the context of the contract, and of business practices and of their getting the money and the collateral words they used, it's like a de facto waiver of liens.

The trial court concluded by saying that the parties treated "the affidavit and other applications and supporting papers as a partial lien-waiver." The trial court declared the lien invalid.

On appeal, McMerit advances three arguments: (1) that the contractor's affidavit does not contain an express waiver of liens, (2) that there was no de facto waiver of liens, and (3) even if the contractor's affidavits are partial lien waivers, they were not sufficient to invalidate the lien here in question. Because of our disposition of the first two issues, we find it unnecessary to address the third.

■ The first issue is easily resolved. McMerit is exactly right in asserting that it did not sign an express waiver of liens. The contractor's affidavit nowhere states that it waives anything. It certainly does not say that it waives liens. The contractor's affidavit is plainly different from the waiver of liens form used by the subcontractors and materialmen.

■ But Knightsbridge argues that the phrase "receipt from Owner of payment of all sums due" amounts to an express waiver of mechanic's liens because there cannot be a mechanic's lien if the contractor has been paid all sums due and because the affidavit states that it will be delivered to a title insurer for the benefit of the owner. While it is true that actual payment to a contractor of all sums due would preclude a lien, the facts of this case make clear that whether all sums due had actually been paid was a matter hotly disputed between the parties. Thus, the question becomes whether acknowledgement of payment of all sums due when a dispute exists as to that very fact is the same as an express waiver of a mechanic's lien. We think not. The parties in this case knew how to draft an express lien waiver because they did so with regard to subcontractors. Further, the statement that the affidavit will be submitted to a title insurer does not necessarily mean it is

a lien waiver because the submission could have some other purpose. For example, it could simply indicate that the money released by the lender to the owner had been paid to the contractor and not spent on things unrelated to the construction project. The contractor's affidavit did not constitute an express waiver.

The key question in this case is whether there was an implied waiver of liens. In that regard, it is well to reexamine what the trial court said on this subject: "[I]n the context of the contract, and of business practices and of their getting the money and the collateral words they used, it's like a de facto waiver of liens." The trial court did not find an implied waiver nor did it find a de facto waiver, it found something "like" a de facto waiver.

In resolving this question of implied waiver, we are guided by certain principles that have evolved over the years concerning contracts in general and waivers of mechanic's liens in particular. A mechanic's lien is a valuable and substantial right. It takes precedence over virtually all other liens whether filed before or after. In the absence of clear evidence to the contrary, it is presumed that one will not preclude himself from exercising a right granted by statute. *VNB Mortgage Corp.* v. *Lone Star*, 215 Va. 366, 371, 209 S.E.2d 909, 914 (1974). Moreover, we have held that doubt about a provision in a contract is to be resolved against the person for whose benefit the language was intended. *Standard Ice Co.* v. *Lynchburg Ice*, 129 Va. 521, 529, 106 S.E. 390, 392 (1921). Further, in *VNB Mortgage Corp.*, we held that we would not deprive the subcontractors and materialmen of their liens "unless they expressly waived their lien rights" or expressly or by clear implication agreed to be bound by the lien waiver of another. 215 Va. at 372, 209 S.E.2d at 914.

After *VNB Mortgage Corp.*, contractors, owners, lenders, and insurers were on notice that, in Virginia, lien waivers either had to be express or established by clear implication. In essence, to avoid the type of litigation which is before the Court in this case, we announced in *VNB Mortgage Corp.* a bright-line rule for lien waivers. We will not retreat from that requirement. Either a waiver must be express, or, if it is to be implied, it must be established by clear and convincing evidence. In the instant case, the trial court said this about the contractor's affidavit:

> Given to a lawyer, he would tear his hair out and say, client, I'm going to save you some money and some litigation.

We're going to put in here this is a release of liens. But it still gets by. It bumps the channel in the bottom but it goes up the river.

The trial court's own language demonstrates, and we agree, that Knightsbridge failed to establish an implied waiver of liens by clear and convincing evidence.

For all the foregoing reasons, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*