Present: Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Whiting, S.J.

DEBRA B. PYSELL
                                        OPINION BY
v.  Record No. 010506        SENIOR JUSTICE HENRY H. WHITING
                                       March 1, 2002
ANGELIA D. KECK, EXECUTOR
OF THE ESTATE OF DAVID ANTHONY PYSELL

         FROM THE CIRCUIT COURT OF THE CITY OF BUENA VISTA
                  Humes J. Franklin, Jr., Judge

     This appeal requires a determination of the scope of an

antenuptial agreement in our adjudication of a widow's claim

against her deceased husband's estate.

     Before their marriage, Debra B. Pysell (the wife) and David

Anthony Pysell (the husband) executed an antenuptial agreement

(the agreement) which recited in pertinent part:

     2.  That it is the intention of the parties that each of
     them shall continue to own as his or her separate property,
     all of the real, personal or mixed property which they
     individually own as of this date.

     3.  That they may hereafter individually acquire additional
     property of a similar nature, and it is the intention of
     the parties hereto that said property shall also be the
     individual property of the person acquiring the same.

     . . . .

     6.  . . . [It is] the intention and desire of the parties
     that their respective rights to each other's property
     acquired by operation of law shall be solely determined and
     fixed by this agreement.

     After the husband died leaving a will which made no

provision for the wife, she filed three claims against his

estate in the Circuit Court of the City of Buena Vista: (1) a

-1-

claim pursuant to Code §§ 64.1-13 and -16 for a surviving spouse's elective share of her deceased husband's estate, (2) a claim under Code § 64.1-151.1 for the family allowance provided to a surviving spouse, and (3) a claim pursuant to Code § 64.1-151.2 for certain property claimed as exempt for the benefit of a surviving spouse.

The executor of the deceased husband's estate filed a declaratory judgment action in the circuit court seeking a determination that the wife was not entitled to any of these claims on two grounds: (1) because she and the husband "were living in a state of permanent separation at the time of his death as a result of the [wife's] abandonment and desertion;" and (2) because the wife's agreement waived "any claim, whatsoever, in the property of" the husband.

Later, the executor filed a motion for summary judgment based on the second ground. In the wife's briefs filed in opposition to the executor's motion for summary judgment, she maintained that the mere recitation of the parties' intent to hold their individual property separately in paragraphs (2) and (3) of the agreement did not constitute a waiver of either party's claim to the separate property of the other during their joint lives. The wife also argued that even if the recitals in paragraphs (2) and (3) were sufficient to constitute such a waiver, the provisions in paragraph (6) were not a waiver of

either party's rights in the estate of the other.  Hence, the wife contended that because paragraph (6) referred only to a waiver by each spouse of his or her statutory rights during the marriage and in the event of a divorce, she was entitled to assert these three claims against his estate.

After argument, the court held that paragraph (6) of the agreement was an effective waiver of the wife's rights in the husband's estate upon his death.  Accordingly, the court entered a final declaratory judgment for the executor.  On the wife's appeal, the parties reassert these arguments.

Both parties agree that the wife is asserting rights against the husband's estate that would normally accrue to a surviving spouse by operation of law.  See Davis v. Davis, 239 Va. 657, 661, 391 S.E.2d 255, 257 (1990) (marital rights of inheritance, to renounce will, and to claims of dower and curtesy arise by operation of law).  They disagree, however, whether those rights were waived in the provisions of the three quoted paragraphs.

We resolve their disagreement by applying familiar principles.  Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms.  See Southerland v. Southerland, 249 Va. 584, 588, 457 S.E.2d 375,

378 (1995) (property settlement agreement in connection with divorce suit). And, "[c]ourts cannot read into contracts language which will add to or take away the meaning of words already contained therein." Id. at 590, 457 S.E.2d at 378, (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1948)). Further, "[a] waiver must be express, or, if it is to be implied, it must be established by clear and convincing evidence." McMerit Constr. Co. v. Knightsbridge Dev. Co., 235 Va. 368, 374, 367 S.E.2d 512, 516 (1988). See also Coleman v. Nationwide Life Ins. Co, 211 Va. 579, 583, 179 S.E.2d 466, 469 (1971).

We see nothing in the unambiguous language of the three paragraphs which does anything more than express the intention of the parties to continue to hold as their separate properties any property which they "individually own[ed]" at the time of the marriage or thereafter acquired as separate property. Consistent with the language in paragraphs (2) and (3), paragraph (6) provides that the parties' "respective rights to each other's property accruing by operation of law shall be solely determined and fixed by this agreement." All three paragraphs deal with property of parties who were living persons at the time. Nowhere in these three paragraphs or elsewhere in the agreement do we find a reference to either party's rights in the property of the estate of the other. In other words, the

-4-

only marital rights determined and fixed by the agreement were those of the husband and wife while they were living.

To the extent that the language in paragraphs (2) and (3) constitutes a waiver, any such waiver is limited to a waiver of marital rights in the property of the other spouse during his or her lifetime. We also reject the executor's construction of the agreement under which the wife's waiver constitutes a surrender of her marital rights in the husband's estate after his death; such a construction requires an unwarranted addition to the plain meaning of the language contained in the agreement, Southerland, 249 Va. at 590, 457 S.E.2d at 378, as well as an unjustified expansion of the scope of any explicit waiver expressed therein. McMerit, 235 Va. at 374, 367 S.E.2d at 516.

Thus, consistent with the language of paragraphs (2) and (3), we read the plain language in paragraph (6) as referring to the property owned by the parties during their joint lives, and not to the property comprising the estate of the deceased spouse. Therefore, we conclude that the trial court erred in entering summary judgment for the executor on this issue.

Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

Reversed and remanded.

JUSTICE KOONTZ, with whom CHIEF JUSTICE CARRICO joins, dissenting.

-5-

I respectfully dissent. This is not a complicated case, and the law applicable to its resolution, as recited by the majority, is well established and requires no repetition here. The essence of the required analysis is a determination of the parties' intent with regard to the ownership of their respective property as expressed in the language of their agreement. In my view, the parties' intent to hold their property separately and, thus, to have the corresponding right to dispose of it however and whenever they chose is sufficiently clear from the language of their agreement. The majority, however, limits the rights determined and fixed by this agreement to those of the parties while they were both living.

We know from the terms of the agreement that on January 25, 2000, Debra W. Blankenship (now Debra B. Pysell) and David Anthony Pysell executed what they styled as an "Ante Nuptial Agreement" in anticipation of their marriage on that same day. This agreement satisfied the statutory requirements for a valid "premarital agreement" pursuant to Code §§ 20-148 and –149 and, undoubtedly, was intended as such.

With regard to the content of a premarital agreement, Code § 20-150 provides that:

> Parties to a premarital agreement may contract with respect to:

1. The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;

2. The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;

3. The disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event;

4. Spousal support;

5. The making of a will, trust, or other arrangement to carry out the provisions of the agreement;

6. The ownership rights in and disposition of the death benefit from a life insurance policy;

7. The choice of law governing the construction of the agreement; and

8. Any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty.

Admittedly, the premarital agreement at issue does not expressly include every provision permitted by Code § 20-150. Although the agreement consists of one type-written page and makes no reference at all to this statute, it was not executed in a vacuum and is not to be similarly interpreted. Draftsmanship is not the issue; the parties' intent is the issue. Code § 20-150 is broad in scope and permits prospective spouses to contract with regard to their property rights during their joint lives as well as at the death of one of them. It is

in this context that the question in this case becomes whether the language of the parties' agreement sufficiently reflects their intent that their agreement include property comprising the estate of the deceased spouse.

There is no dispute that the parties intended to hold their existing property as "separate property" and to similarly hold subsequently acquired property in the same manner. Paragraphs (2) and (3) of their premarital agreement express that intent clearly and explicitly. This agreement became effective upon the parties' marriage, Code § 20-148, and, thus, it necessarily follows that the parties intended by the language of these paragraphs to hold their property as "separate property" rather than as "marital property" following that marriage. See Code § 20-107.3 (defining separate and marital property and limiting equitable distribution awards to marital property upon decree of dissolution of marriage).

One of the primary purposes of a premarital agreement is to establish such a distinction in the ownership of property of married couples so that one spouse may hold property free from any rights of the other spouse during the marriage or upon a dissolution of the marriage. Such provisions are permitted by Code § 20-150. Moreover, "separate property" and "premarital agreements" have come to have commonly understood connotations among prospective spouses such that they are commonly understood

-8-

to convey the notion that, upon marriage, the wife will have her property, the husband will have his property, and each may dispose of that property as if no marriage had occurred. While certainly of no legal efficacy, that notion is not without merit in determining the intent of parties to a premarital agreement such as the present one, which is significantly lacking in specificity.

In this regard, the parties' agreement was executed without express reference to the death of either spouse as specifically addressed in Code § 20-150(3) and raised by implication in Code § 20-150(5) which addresses a will. However, in paragraph (6), the parties did provide that it was their intent "that their respective rights to each other's property acquired by operation of law shall be solely determined and fixed by this agreement." This paragraph must have some purpose other than, and in addition to, the purpose of the other paragraphs in the parties' agreement. But the majority lumps paragraphs (2) and (3) together with paragraph (6) and concludes that these paragraphs refer to property owned by the parties during their joint lives, and not to property comprising the estate of the deceased spouse. I disagree. The majority has focused entirely on the draftsmanship of the document rather than the intent of the parties.

As I understand the majority's opinion, paragraph (6) of the parties' agreement is read as having no real purpose or meaning. The agreement expressly addressed the parties' intent with regard to their property rights arising from the marital relationship during their joint lives in paragraphs (2) and (3). Excluding those rights, the remaining rights that could be "acquired by operation of law" are those that accrue to a surviving spouse. In the present case, there is no dispute that the asserted claims by Mrs. Pysell against Mr. Pysell's estate pursuant to (1) Code §§ 64.1-13 and -16 (elective share of deceased spouse's estate), (2) Code § 64.1-151.1 (family allowance for surviving spouse), and (3) Code § 64.1-151.2 (exempt property for benefit of surviving spouse) are acquired by operation of law. In my view, paragraph (6) of the parties' agreement clearly reflects the parties' intent that Mrs. Pysell's right to assert these claims are to be <u>solely</u> determined and fixed by the agreement. In that agreement, the parties by the language in paragraph (2) and (3) expressed their intent that each spouse's property would be owned as separate property. There is simply no language in the parties' agreement to suggest that the parties intended that, upon the death of one spouse, the surviving spouse could subject the property comprising the estate of the deceased spouse to claims acquired by operation of the previously mentioned statutes. When fairly

-10-

considered, paragraph (6) sufficiently expresses a contrary intent of the parties.

For these reasons, I would affirm the judgment of the trial court entering summary judgment for the executor of Mr. Pysell's estate.