**ARTISTIC STONE CRAFTERS, INC., Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, and Tesoro Corporation, Defendants.**

**Action No. 2:10CV45.**

United States District Court, E.D. Virginia, Norfolk Division.

July 27, 2010.

Marshall A. Winslow, Jr., Esq., for Plaintiff.

Neil S. Lowenstein, Esq., for Defendants.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on the motion for summary judgment filed by defendants Tesoro Corporation ("Tesoro") and Safeco Insurance Company of America ("Safeco") (collectively "Defendants"). The Court, finding oral argument to be unnecessary, **GRANTS** summary judgment to the defendants, and the complaint is **DISMISSED WITH PREJUDICE.**

### I. Facts and Procedural History

#### A. Factual History

Tesoro served as the general contractor for the renovation of a cafeteria at the Federal Law Enforcement Training Center located in Glynco, Georgia. (G. DeFelicibus Dep. 8–9, 14.) Pursuant to the requirements of the Miller Act, 40 U.S.C. §§ 3131–34, Tesoro obtained a $4,929,292 surety payment bond from Safeco, which bound Safeco to reimburse Tesoro's subcontractors on the renovation project in the event that Tesoro failed to make prompt payments to them. (Compl. ¶ 7.) Tesoro then contracted with several sub-

contractors for labor, materials, and equipment for the cafeteria renovation project.

On July 11, 2007, Tesoro entered into a subcontract ("Subcontract") with Artistic Stone Crafters, Inc. ("Artistic") in which Artistic agreed to replace tile in the cafeteria floor in exchange for $135,000, such amount to be paid by Tesoro in periodic installments. (Subcontract ¶¶ 4, 5.1, Mot. Summ. J., Ex. B, Docket No. 14.) The Subcontract between Artistic and Tesoro provided that, in order to obtain payment for additional amounts in excess of the $135,000 subcontract price, Artistic must give Tesoro written notice of such claims (Subcontract ¶ 12.), and that such claims would not be valid unless authorized by a written change order. (Id.) James Hopkins, Jr. ("Hopkins"), Artistic's owner and manager, was aware of and understood the written change order requirement. (J. Hopkins Dep. 51.)

The Subcontract further required that Artistic submit a lien waiver to Tesoro as a condition precedent to any payment by Tesoro. (Subcontract ¶ 5.2.) Additionally, the Subcontract provided that "Final Payment shall constitute a waiver of all claims by [Artistic] relating to [Artistic's] work." (Subcontract ¶ 6.3.)

Artistic commenced the tiling job on July 16, 2007 and continued work through November 2, 2007, on which date Artistic left the job because it had not received the payments that are the subject of this lawsuit. (J. Hopkins Dep. 63–64.) During that period, Tesoro issued two written change orders to Artistic. The first written change order, signed by S.E. Perritt, Tesoro's Vice President, on August 31, 2007, was for $12,840. (Mot. Summ. J., Ex. C.) The second written change order, signed by S.E. Perritt on November 2, 2007, was for $10,593.46. (Mot. Summ. J., Ex. E.)

Tesoro made periodic payments to Artistic that totaled $158,433.46. (Def. St. Mat. Facts ¶ 25, Docket No. 14; Pl. St. Mat. Facts ¶ 25., Docket No. 25.) This amount represented the original subcontract amount of $135,000 plus the two written change orders of $12,840 and $10,593.46. (Mot. Summ. J., Ex. E.) However, Artistic contends that Tesoro owes Artistic an additional $75,703.

Artistic claims that the $75,703 it seeks in this suit represents unanticipated costs incurred by Artistic in reliance on oral promises of Tesoro's representatives to reimburse Artistic for such costs. In support of its claim, Artistic asserts that Hopkins repeatedly telephoned E.G. Gonzalez, Tesoro's Operations Manager, to request written change orders for the unanticipated costs incurred by Artistic. (J. Hopkins Dep. 24–25.) Artistic further alleges that Gonzalez told Hopkins that office "clerical problems" had prevented Tesoro from generating the written change orders, but orally authorized Artistic to incur the costs and promised that Tesoro would eventually reimburse Artistic for such costs. (Id.)

## B. Procedural History

On October 21, 2008, Artistic filed a complaint (Docket No. 1.) in the United States District Court for the Southern District of Georgia seeking $75,703, plus attorney's fees and costs. Artistic asserted breach of contract and quantum meruit claims against Tesoro, and a Miller Act claim against Safeco. On June 8, 2009, the defendants filed a motion for summary judgment (Docket No. 14.) and a motion to dismiss, or in the alternative transfer, for improper venue (Docket No. 13.). Pursuant to a forum-selection clause in the Subcontract, the action was transferred to the United States District Court for the Eastern District of Virginia on January 25, 2010. (Order, Docket No. 34.)

## II. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Stated another way, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 213 (4th Cir.2007). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered by a court in its determination. *Id.* at 248, 106 S.Ct. 2505.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the judge must construe the facts in the light most favorable to the non-moving party, and may not make credibility determinations or weigh the evidence. *Id.* at 255, 106 S.Ct. 2505; *Holland,* 487 F.3d at 213. However, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Discussion

### A. Genuine Issue as to Material Fact

Artistic asserts two genuine issues of material fact related to the "Subcontractor Final/ Partial Waiver of All Claims for and Right of Lien" that was signed by Hopkins on November 2, 2007. First, Artistic states that there is a factual dispute as to "whether Tesoro knew that [Artistic] contested the amount being paid despite the signed release." (Pl. St. Mat. Facts. ¶ 20; Pl. Resp. 9.) However, even if Tesoro knew that Artistic contested the amount it was being paid by Tesoro at the time Artistic signed the release, such knowledge is irrelevant if an authorized Artistic representative signed a valid release waiving Artistic's right to bring claims against Tesoro. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").[1] Because

---

**1.** In support of its argument, Artistic cites *McMerit Constr. Co. v. Knightsbridge Dev. Co.,* 235 Va. 368, 367 S.E.2d 512 (1988), in which the defendant argued that although the plaintiff's affidavit acknowledging receipt of all payments did not expressly waive the plaintiff's right to bring lien claims, it was equivalent to an express waiver. The court held that "acknowledgement of payment of all sums due when a dispute exists as to that very fact [is not] the same as an express waiver of a mechanic's lien." *Id.* at 373, 367 S.E.2d 512. As discussed below, Artistic has signed an actual express waiver of all claims, and therefore the *McMerit* holding is inapplicable.

Artistic does not dispute Tesoro's assertion that an authorized representative signed the release, there is no genuine issue of material fact on this point.

Second, Artistic asserts that there is a question of fact as to whether Hopkins, its owner and manager, was told that he had to sign the waiver in order to be paid. (Pl. Resp. 9.) However, this fact is not in dispute, as the Defendants do not deny that Tesoro required Artistic to submit a waiver of claims prior to receiving payment.

Having reviewed the pleadings, depositions, and affidavits submitted by the parties, and for the reasons stated above, the Court determines that there is no genuine issue as to any material fact. Therefore, based upon the material facts not in dispute, the Court will consider whether the Defendants are entitled to judgment as a matter of law.

### B. Choice of Law

■ As this action concerns the interpretation of contractual provisions, the Court begins by determining which state law governs such interpretation. Here, the Subcontract between Tesoro and Artistic contains a choice-of-law clause providing that "all disputes under this Subcontract shall be determined and interpreted pursuant to the laws of the Commonwealth of Virginia." (Mot. Summ. J., Att. A ¶ 13.3, Docket No. 14.) The enforceability of such choice-of-law provisions depends on the applicable choice-of-law rules.

Jurisdiction in the instant lawsuit is based on both the statute conferring exclusive jurisdiction on federal courts in Miller Act claims, 40 U.S.C. § 3133, and the statute conferring jurisdiction on federal courts in cases involving diversity of citizenship, 28 U.S.C. § 1332. Where an action has been brought under both federal question and diversity jurisdiction, courts have analyzed the choice-of-law question according to the rules appropriate to diversity jurisdiction cases. *See Totalplan*

*Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir.1994)(for choice of law analysis, treating action brought under both diversity jurisdiction and federal question jurisdiction as if it were brought solely under diversity jurisdiction); *Stud v. Trans Intern. Airlines*, 727 F.2d 880, 881 (9th Cir. 1984)(same).

■ When an action brought under diversity jurisdiction is transferred from one federal district to another pursuant to 28 U.S.C. § 1404(a), as has happened here, the law of the state of the transferor court governs. *Van Dusen v. Barrack*, 376 U.S. 612, 627, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). However, an exception to the *Van Dusen* rule applies when a Section 1404(a) transfer is made pursuant to a forum selection clause, and in such cases the law of the state of the transferee court is to be applied. *Freedman v. America Online, Inc.*, 325 F.Supp.2d 638, 651–52 & n. 28 (E.D.Va.2004); *see also* 17 *Moore's Federal Practice—Civil*, § 111.20[3][a] (2010) (citing *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 855 F.Supp. 627, 631 (S.D.N.Y.1994); *cf. Volvo Const. Equip. North America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 600 (4th Cir.2004)(noting that the *Van Dusen* rule should not be blindly applied where the result would run counter to the principles justifying the rule).

■ In this case, because the action has been transferred to a federal court located in Virginia pursuant to a forum selection clause in the Subcontract, the Court looks to Virginia's choice-of law rules. "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances...." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir.2007)(citing *Hitachi Credit Amer. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir.1999)); *see also Hooper v. Musoli-*

*no*, 234 Va. 558, 566, 364 S.E.2d 207 (1988); *Tate v. Hain*, 181 Va. 402, 410, 25 S.E.2d 321 (1943).[2] Therefore, the Court will adhere to the choice of law clause in the Subcontract and apply Virginia law when evaluating its provisions.[3]

### C. Release

■ In support of the motion for summary judgment, the Defendants claim that when Artistic received the last payment from Tesoro on November 2, 2007, Artistic executed a binding release that discharged Tesoro from any additional duties or obligations to Artistic.

The Subcontract provides that "as a condition precedent to any payment," Artistic shall provide "a Partial Waiver and Release of Lien" as evidence that "all payrolls ..., material bills, and other indebtedness applicable to [Artistic's] work have been paid." (Subcontract ¶ 5.2.) Under the terms of the Subcontract, Artistic must also provide a "Final Waiver and Release of Lien" as a condition precedent to final

payment. (Subcontract ¶ 6.3.) Accordingly, prior to obtaining the last installment payment,[4] Artistic's owner and manager, Hopkins, signed a document entitled "Subcontractor Final/ Partial Waiver of All Claims for and Right of Lien." (Mot. Summ. J., Ex. G.) This document provided as follows:

> For a valuable consideration (in the amount of $10,593.46), the receipt of which is hereby acknowledged, *the undersigned hereby waives, releases, and relinquishes all claims for labor performed, materials furnished, equipment and/ or machinery supplied* and further states that no other person has any right to a lien of claim against the owner on account of work performed or for material supplied in or on any and all property owned by Tesoro Corporation ... for job located at Kitchen Venthood Retrofit ... Glynco, VA 31524.

(*Id.*)(emphasis added).

■ Under Virginia law, where the language of a release agreement is clear and

---

**2.** The Court notes that the application of Georgia law, which is the law of the state of the transferor court, would also give effect to the choice of law clause in the Subcontract. *See Carr v. Kupfer*, 250 Ga. 106, 107, 296 S.E.2d 560 (1982)("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause.").

**3.** Artistic argues that the work that is the subject of this dispute was not governed by the Subcontract, and that the choice of law provision in the Subcontract does not therefore apply to this action. However, the Subcontract provides that Artistic will "[f]urnish labor, material and equipment necessary to ... [i]nstall tile flooring system" (Subcontract ¶ 3.1), provides that Artistic "will perform such other services or work for Tesoro as may be reasonably required to perform the Prime Contract subject to equitable adjustment" (Subcontract St 11.2.), and includes a method by which Artistic may make claims for increases to the sum of the Subcontract (Subcontract ¶ 12.1.). In this action, Artistic seeks reimbursement for allegedly unanticipated ex-

penses related to preparing the cafeteria floor for tiling. Because the Subcontract provisions cited above clearly contemplate claims for such additional work and provide a method for making such claims, the work is within the scope of the Subcontract, and therefore the Subcontract's choice-of-law clause is applicable. *See Pennsylvania Elec. Coil, Ltd. v. City of Danville*, No. 4:06CV0008, 2008 WL 919535, at *8 (W.D.Va. Apr. 4, 2008) (rejecting plaintiff's contention that extra work performed by plaintiff fell outside the scope of contract where contract provided for written change orders for unanticipated costs).

**4.** The parties dispute whether Tesoro's November 2, 2007 payment to Artistic was intended to be the *final* payment. The Court finds this factual dispute to be immaterial, as the release waives all claims for costs incurred on or before November 2, 2007, without regard to whether any payment received on that date was final. Because Artistic seeks reimbursement for costs incurred *prior to* November 2, 2007, its claim is governed by the November 2, 2007 release.

unambiguous, the agreement is controlling. *Berczek v. Erie Ins. Group,* 259 Va. 795, 799, 529 S.E.2d 89 (2000); *Richfood, Inc. v. Jennings,* 255 Va. 588, 591, 499 S.E.2d 272 (1998); *Modern Cont'l South v. Fairfax County Water Auth.,* No. 225019, 2006 WL 408412, at *19 (Fairfax Cty. Va. Cir. Ct. Feb. 9, 2006)(applying rule to release agreement signed by subcontractor in exchange for progress payment on construction project). Here, the November 2, 2007 release agreement clearly states that Artistic waived all claims for labor, materials, equipment, and machinery provided on or before the date of signing. Because Artistic's claims in this suit are for labor and materials provided prior to November 2, 2007, they are barred by the clear and unambiguous language of the November 2, 2007 release agreement.[5]

Artistic seeks to distinguish the facts of this case from types of releases described in the release agreement. Although Artistic construes the release agreement to waive only claims of liens against property owned by Tesoro, such interpretation is inconsistent with the agreement's text. The release agreement contains two waiver clauses: the first waives all claims against Tesoro and the second waives liens against property owned by Tesoro. Artistic's claims fall within the first clause and are therefore governed by the release agreement. *See First American Bank of Virginia v. J.S.C. Concrete Constr.,* 259 Va. 60, 69, 523 S.E.2d 496 (2000)(noting that waiver agreement contained two parts, one of which waived all claims and the other of which waived liens).

Therefore, Artistic's breach of contract and quantum meruit claims against Tesoro are **DISMISSED WITH PREJUDICE.**

### D. Breach of Contract

 Even if Artistic had not waived its right to bring claims against Tesoro, its breach of contract claim would still fail as a matter of law. The Subcontract provides that a written change order must be issued in order for Artistic to be paid for amounts in excess of the $135,000 specified in the Subcontract. Artistic does not dispute that the Subcontract contains such a provision, but argues that Gonzalez orally promised to pay Artistic for its additional costs, and that such promises constituted a waiver of the written change order requirement. However, assuming for the sake of argument that such oral promises were made, they did not constitute waiver of the contractual written change order requirement.

 Under Virginia law, contractual provisions containing written change order requirements are binding upon the parties to the contract. *Atlantic & Danville Ry. v. Delaware Constr. Co.,* 98 Va. 503, 37 S.E. 13, 16 (1900)(noting that such provisions are "obligatory upon the parties, and not to be disregarded"). Written change order requirements maintain order and predictability in the construction business, and are meant "to avoid subsequent disagreement, and prevent just such a controversy as has arisen in this case." *Id.* For this reason, "where there is a method under the contract by which a party can insure the recovery of the cost of extra work, that party is not entitled to recovery where it fails to follow that method. This is a sound and logical rule." *Pennsylvania Elec. Coil, Ltd. v. City of Danville,* No. 4:06 cv80, 2008 WL 919535, at *6 (W.D.Va. Apr. 4, 2008)(citing *Main v. Dept. of Highways,* 206 Va. 143, 142 S.E.2d 524 (1965) &

---

**5.** Because the clear and unambiguous language of the release agreement waived all claims against Tesoro, the Court does not reach the question of whether the November 2, 2007 payment was a "Final Payment" constituting a waiver of all claims. (Subcontract ¶ 6.3.)

*Kirk Reid Co. v. Fine*, 205 Va. 778, 139 S.E.2d 829 (1965)); *see also Perry Eng'g Co., Inc. v. AT & T Comm., Inc.*, No. 90–0153, 1992 WL 201944, at *4 (W.D.Va.1992)(noting that written change order requirements protect contractor from "the danger that verbal orders for significant changes could result in disputes over the extent of the work to be done as well as the price to be paid for such changes").

■■ The burden is on Artistic to show that the written change order requirement has been waived, *see Serv. Steel Erectors Co. v. SCE, Inc.*, 573 F.Supp. 177, 179 (W.D.Va.1983), and such waiver must be shown through "clear, unequivocal, and convincing evidence." *Pennsylvania Elec. Coil, Ltd.*, 2008 WL 919535, at *7 (quoting *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870 (1983)) (internal quotation marks omitted). In this case, Tesoro never indicated that it intended to waive the written change order requirement, and the parties did not act under the assumption that such requirement had been waived. In fact, the parties executed two such written change orders. Moreover, Hopkins often requested additional written change orders from Gonzalez, who repeatedly promised to provide them. (J. Hopkins Dep. 24–25.) Rather than stating that written change orders were unnecessary or would not be a prerequisite to payment, Gonzalez purportedly claimed that "clerical errors" had prevented the written change orders from being issued in a timely manner. (*Id.*) Furthermore, Te-

soro never paid for any claims that were not included within the original Subcontract price or within a written change order. *See Ross Eng'g Co. v. Pace*, 153 F.2d 35, 49 (4th Cir.1946) (finding waiver where written change orders were never issued, parties never mentioned written change orders in their dealings with each other, and payment was made for additional claims not included in written change orders); *Perry Eng'g Co.*, 1992 WL 201944, at *6 (finding no waiver where twenty-one written change orders were issued and defendant never paid for claims not included within written change orders).

These facts, reviewed in the light most favorable to Artistic, do not clearly and unequivocally indicate that Tesoro waived the contractual written change order requirement.[6] Therefore, as a matter of law, Artistic has not established that the written change order requirement was waived. Accordingly, even if Artistic's breach of contract claim had not been waived pursuant to the November 2, 2007 release agreement, it would be **DISMISSED WITH PREJUDICE.**

### E. Quantum Meruit

■■ Artistic also grounds its claim for payment on a quantum meruit theory. However, even if Artistic had not waived its right to bring claims against Tesoro, its quantum meruit claim would still fail as a matter of law. Quantum meruit is an equitable action that provides relief where one party has been unjustly enriched by the labor of another. *Raymond, Colesar,*

---

6. While it might be tempting to find that waiver took place if Gonzalez knowingly permitted work to be performed while making false assurances to Hopkins that change orders were being prepared, the written change order requirement is intended to protect against just such a scenario by preventing disputes regarding the intent and nature of oral promises made by a mid-level employee. *See Atlantic & Danville Ry.*, 37 S.E. at 16

(noting that written change order requirements are meant "to avoid subsequent disagreement, and prevent just such a controversy as has arisen in this case.") Such a well-understood rule provides a playing field where the rules are known by the contracting parties, thus removing the uncertainties inherent in the construction business and encouraging parties to read and follow the governing contract.

*Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 490–91 (4th Cir.1992). "Under Virginia law, ... where the contract is valid, clear and unambiguous and there is no misunderstanding concerning the price to be paid, quantum meruit is not available." *Perry Eng'g Co., Inc.*, 1992 WL 201944, at *7 (denying quantum meruit claim for costs not included in written change order)(citing *Hendrickson v. Meredith*, 161 Va. 193, 170 S.E. 602, 604 (1983)); *see also Raymond, Colesar, Glaspy & Huss, P.C.*, 961 F.2d at 491("One cannot obtain quantum meruit relief from another if he has expressly delineated the contractual obligations the two will have on the subject in question.") (citing *Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 96 S.E. 754 (1918)). Therefore, because the Subcontract specifies a process for the reimbursement of additional, unanticipated costs incurred by Artistic in the cafeteria renovation project, Artistic is unable to obtain such reimbursement under a theory of quantum meruit. Accordingly, even if Artistic had not waived its right to bring a claim against Tesoro, the quantum meruit claim would be **DISMISSED WITH PREJUDICE.**

### F. Miller Act Claim

Finally, Artistic has brought a claim under the Miller Act, 40 U.S.C. § 3133, against Safeco, the surety company that issued the payment bond to Tesoro. When a contractor who purchases a payment bond from a surety company fails to make timely contractual payments to the subcontractor, the Miller Act creates a federal right of action for a subcontractor to sue the surety company. 40 U.S.C. § 3133. However, the surety company's liability is derivative of the contractor's liability to the plaintiff. *United States v. Seaboard Sur. Co.*, 817 F.2d 956, 962 (2d Cir.1987); *Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1153 (9th Cir.1987); *see Global Bldg. Supply,*

*Inc. v. WNH Ltd. P'ship*, 995 F.2d 515 (4th Cir.1993)(granting summary judgment to surety company and to contractor on underlying claims in Miller Act lawsuit). As discussed above, Artistic does not have a cognizable claim for payment under Virginia law. Therefore, it cannot seek reimbursement for its claims from Safeco. Accordingly, Artistic's claim against Safeco is **DISMISSED WITH prejudice.**

For the reasons described above, the defendants' motion for summary judgment (Docket No. 14.) is **GRANTED,** and the complaint (Docket No. 1.) is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**